[No. 15857-4-II.    Division Two.    March 17, 1995.]

HAROLD CHANNEL, ET AL, *Appellants*, v. JONATHAN LEE MILLS, ET AL, *Respondents*.

*Duane Lansverk* and *Landerholm, Memovich, Lansverk & Whitesides Inc. P.S.,* for appellants.

*Odine H. Husemoen, Norman C. Dick,* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow, P.S.,* for respondents.

MORGAN, J. — This is a personal injury case in which the Plaintiffs appeal a jury verdict in favor of the Defendant.[1] We affirm.

On August 30, 1986, a 2-car collision occurred at the intersection of N.E. 54th Street and St. James Road in Vancouver. Patricia Channel was the driver of one car, and Jonathan Mills was the driver of the other. Keith Anderson, the driver of a third car, narrowly missed being involved.

The intersection at N.E. 54th and St. James is controlled by a red-yellow-green traffic light. N.E. 54th is a 2-way street, with one lane for westbound traffic and one lane for

---

[1]This is the second appeal in this case. The opinion in the earlier appeal is published at 61 Wn. App. 295, 810 P.2d 67 (1991). The issues in the earlier appeal differ from the ones here.

eastbound traffic. St. James is a 1-way street, with two lanes for southbound traffic. The speed limit on St. James is 35 m.p.h.

Prior to the accident, Channel was driving west on N.E. 54th. Her daughters, Linda and Christy, were with her. At the same time, Mills was driving south on St. James in the left (easterly) lane. Anderson was driving south on St. James in the right (westerly) lane. Mills was slightly behind Anderson, so Anderson entered the intersection first.

As Anderson approached the intersection, something caused him to apply his brakes. He skidded 100 to 160 feet, then accelerated. He passed just in front of the Channel vehicle.

As Mills entered the intersection, he broadsided the Channel vehicle. Although he heard Anderson skidding, he never saw the Channel vehicle, and he never applied his brakes. Nor did Channel see him or apply her brakes. Christy Channel was killed, and Patricia and Linda Channel were seriously injured.

Channel sued Mills and Anderson. However, she voluntarily dismissed Anderson before trial.

The issue at trial was who had the green light. Patricia and Linda Channel said they did, and Mills and Anderson said they did. The jury returned a defense verdict, as well as a special interrogatory stating that Mills and Anderson had the green light.

Channel now assigns error to three rulings made by the trial court during trial. One involves the exclusion of evidence concerning Mills' speed. A second involves the admission of evidence from an unlicensed engineer. A third involves the exclusion of a photograph taken about a year after the accident.

I

At trial, Channel wanted to argue that even if she ran the red light, Mills was speeding, and that but for his speed, he could have avoided the collision. Thus, she called, out of the presence of the jury, an accident reconstructionist named Keith M. Cronrath. Cronrath assumed that a reasonable

person driving south on St. James would have been traveling the speed limit, 35 m.p.h. He calculated Mills' speed "at most probably 51 miles per hour at impact".[2] He said that Mills' "cone of vision" would have extended 20 degrees to the east,[3] and that Mills could have seen Channel's car when Mills was 94 feet north of the point of impact. At that point, he said, Channel's speed was "at most probably 24 miles per hour",[4] and Channel would have been 43 to 45 feet east of the point of impact. Opining that it was proper to allow Mills 1.75 seconds of "reaction time",[5] he testified that if Mills had been traveling 35 m.p.h. instead of 51 m.p.h.,

> the vehicles would have cleared. In actuality, at that point you wouldn't even need to brake. They'd clear without braking.

Report of Proceedings (Jan. 14, 1992), at 51. The trial court excluded the offer on the ground that it was not relevant to the issue before the jury.

The question is whether, and when, a favored driver's speed should be deemed a "proximate cause" of a collision.[6] The question supposes a favored driver who has the right of way but is speeding; a disfavored driver, pedestrian or cyclist who invades the favored driver's right of way; and an ensu-

---

[2]Report of Proceedings (Jan. 14, 1992), at 37. An expert hired by the defense calculated Mills' speed at 30 to 35 m.p.h.

[3]Cronrath testified: "In other words, as you're driving you're aware — reasonably aware of what's going on within a twenty degree cone of vision, and that's plus or minus twenty degrees. Twenty degrees this side, twenty degrees that side." Report of Proceedings (Jan. 14, 1992), at 46.

[4]Report of Proceedings (Jan. 14, 1992), at 37.

[5]Cronrath testified "that almost all people will have reacted to an unexpected hazard similar to this in one and three quarters second." He then went on, "And then there's braking from at the end of the one and three quarters seconds to this point [point of impact]." Report of Proceedings (Jan. 14, 1992), at 46. Thus, he was considering "reaction time" to be the time that elapses from perceiving a hazard to first hitting the brakes.

[6]More simply formulated, the question is when can a favored driver's excessive speed serve as the predicate for liability. As Prosser and Keeton observe, "the language of causation", when used to decide whether speed can serve as a basis for liability, "leads often to confusion". W. Page Keeton et al., *Prosser and Keeton on Torts* § 41, at 264 (5th ed. 1984). We use the proximate cause formulation in the text, because it is the formulation found in the Washington cases.

ing collision. Thus, the question can arise in a variety of contexts. In one, the favored driver is speeding at a controlled intersection, and a disfavored driver runs the red light or stop sign. *E.g., Church v. Shaffer,* 162 Wash. 126, 297 P. 1097 (1931); *Baker v. Herman Mut. Ins. Co.,* 17 Wis. 2d 597, 602-03, 117 N.W.2d 725, 728-29 (1962). In another, the favored driver is speeding at an uncontrolled intersection, and a disfavored driver fails to yield. *E.g., Grobe v. Valley Garbage Serv., Inc.,* 87 Wn.2d 217, 220, 551 P.2d 748 (1976); *Whitchurch v. McBride,* 63 Wn. App. 272, 818 P.2d 622 (1991), *review denied,* 118 Wn.2d 1029 (1992); *Marchese v. Methany,* 23 Ariz. 333, 338, 203 P. 567, 569 (1922). In a third, the favored driver is speeding when an oncoming driver turns left across, or swerves into, his lane. *E.g., Bohnsack v. Kirkham,* 72 Wn.2d 183, 194, 432 P.2d 554 (1967); *White v. Greyhound Corp.,* 46 Wn.2d 260, 264, 280 P.2d 670 (1955); *Smith v. Sherman Smith Trucking Co.,* 569 So. 2d 347 (Ala. 1990). In a fourth, the favored driver is speeding when a disfavored driver, pedestrian or cyclist darts into the right of way from a curb or driveway. *E.g., Chhuth v. George,* 43 Wn. App. 640, 644, 719 P.2d 562, *review denied,* 106 Wn.2d 1007 (1986); *Theonnes v. Hazen,* 37 Wn. App. 644, 646-48, 681 P.2d 1284 (1984). In a fifth, the favored driver is operating a train, which is speeding, and the train's right of way is violated by a car or truck that fails to stop at a grade crossing. *Dombeck v. Chicago, M., St. P. & Pac. R.R.,* 24 Wis. 2d 420, 129 N.W.2d 185 (1964); *Barlett v. Kansas City S. Ry.,* 854 S.W.2d 396, 400 (Mo. 1993). In our discussion, we utilize authorities from all of these contexts.

Generally, "proximate" cause subdivides into cause in fact and legal cause. *Christen v. Lee,* 113 Wn.2d 479, 507, 780 P.2d 1307 (1989); *Baughn v. Honda Motor Co.,* 107 Wn.2d 127, 142, 727 P.2d 655 (1986); *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985); *Braegelmann v. County of Snohomish,* 53 Wn. App. 381, 384, 766 P.2d 1137, *review denied,* 112 Wn.2d 1020 (1989). A cause in fact is a cause but for which the accident would not have happened. *Christen,*

at 507; *Baughn*, at 142. A legal cause is a cause in fact that warrants legal liability as a matter of social policy.[7] *Christen*, at 508; *Baughn*, at 146; *Hartley*, at 779. A cause is "proximate" only if it is *both* a cause in fact and a legal cause.[8] *Hartley*, at 777-81;[9] *King v. Seattle*, 84 Wn.2d 239, 249-50, 525 P.2d 228 (1974); *see Christen*, at 507-08.

Various cases illustrate how these principles of causation apply to a favored driver's excessive speed. In *Berry v. Sugar Notch*, 191 Pa. 345, 43 A. 240 (1899), a tree fell on the favored driver's car while he was driving at excessive speed. He sued the City for negligently failing to inspect and remove the tree. The City argued "that the speed was the immediate cause of the plaintiff's injury, inasmuch as it was the particular speed at which he was running which brought

---

[7]The *Hartley* court said:

"Legal causation . . . rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on 'mixed considerations of logic, common sense, justice, policy, and precedent.' *King v. Seattle*, at 250 (quoting 1 T. Street, *Foundations of Legal Liability*100, 110 (1906)). *See also* Prosser, at 244." *Hartley*, at 779.

[8]The reason is that not all causes in fact warrant the imposition of legal liability. " '[B]ut for' is rarely an adequate notion of cause. We do not say that since, in all probability, [plaintiff] would not have had an accident on I-70 if Columbus had not discovered America, Columbus caused the accident. Cf. *Berry v. Sugar Notch Borough*, 191 Pa. 345, 43 Atl. 240 (1899); *Central of Georgia Ry. v. Price*, 106 Ga. 176, 32 S.E. 77 (1898). What we pick out from the welter of necessary or sufficient conditions as 'the cause' of some event depends on the nature of our interest in the event. If we were historians of technology we might attribute [plaintiff's] accident to the inventor of the internal combustion engine." *Milam v. State Farm Mut. Auto. Ins. Co.*, 972 F.2d 166, 169 (7th Cir. 1992).

[9]The *Hartley* court notes, "Some confusion probably has been generated by the imprecise use of the term 'proximate cause' to encompass cause in fact and legal causation alone or in combination." This confusion, it says, is embodied in Washington Pattern Instruction 15.01, which defines "proximate cause" as "a cause which in a direct sequence, unbroken by any new independent cause, produces the [injury] [event] complained of and without which such [injury] [event] would not have happened". *Hartley*, at 778; *see also, Alger v. Mukilteo*, 107 Wn.2d 541, 545, 730 P.2d 1333 (1987); *King v. Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974). We agree.

the car to the place of the accident at the moment when the tree blew down". The court rejected this argument, stating:

> This argument, while we cannot deny its ingenuity, strikes us, to say the least, as being somewhat sophistical. That his speed brought him to the place of the accident at the moment of the accident was the merest chance, and a thing which no foresight could have predicted. The same thing might as readily have happened to a car running slowly, or it might have been that a high speed alone would have carried him beyond the tree to a place of safety.

*Berry*, at 348-49.

In *Baker v. Herman Mut. Ins. Co., supra*, a southbound truck collided with an eastbound car at an intersection controlled by a stop sign for eastbound traffic. The plaintiff, a passenger in the car, argued that the truck driver should be found liable because he had been driving faster than the speed limit, which was 40 m.p.h. The court said:

> Even if the truck was traveling in excess of forty miles per hour, we are satisfied that its speed could not have been causal. This court has never held that excessive or unlawful speed is causal merely because it places the vehicle at a particular place at a particular time. Excessive speed is causal, however, when it prevents or retards the operator, after seeing danger, from slowing down, stopping, or otherwise controlling the vehicle so as to avoid a collision.

*Baker*, at 602. According to the court, a reasonable person driving southbound would not have realized the car was not going to yield until a few feet before the collision, and the truck driver, as a matter of law, lacked opportunity to avoid the collision.

In *Dombeck v. Chicago, M., St. P. & Pac. R.R., supra*, a car drove out in front of a train, and three people were killed or injured. The claimants argued the train had been traveling 65 m.p.h. when its legal speed limit was 40 m.p.h. Concluding "that the trial court did not err in failing to submit a jury question as to the train's speed", *Dombeck*, at 435, the court held:

> Speed is not causal merely because the train arrived at the crossing the instant it did while if it had been going slower the car might have safely crossed ahead of it.

*Dombeck*, at 433. Quoting *Baker*, the court went on to say that even if the train had been going the legal speed limit, it could not have stopped or otherwise avoided the collision.

In *Marchese v. Methany, supra*, the plaintiff's southbound car collided with the defendant's westbound truck, apparently at an uncontrolled intersection. According to the defendant's testimony, the plaintiff had been driving 26 m.p.h. in a 15 m.p.h. zone. Based on this testimony, the defendant contended that

> [i]f [plaintiff's] car had been driven at a lawful speed it could not have been at the place where the accident occurred, and therefore the [plaintiff's] negligence was the direct, proximate, and sole cause of the collision.

*Marchese*, at 336. Citing *Sugar Notch*, the court rejected this contention.

In *Smith v. Sherman Smith Trucking Co., supra*, the plaintiff's northbound car swerved into the southbound lane, where it collided with the defendant's oncoming truck. The plaintiff sued, and the defendant moved for summary judgment. The plaintiff produced testimony from an expert, who opined that the truck had been traveling 48 m.p.h. in a 40 m.p.h. zone. The court held the defendant not liable, because his speed had not contributed to the accident "other than the fact that his [vehicle] happened to be at the place [plaintiff] was." *Smith*, 569 So. 2d at 349 (quoting *Fox v. Bartholf*, 374 So. 2d 294 (Ala. 1979)).

In *Barlett v. Kansas City S. Ry., supra*, the plaintiff's theory of causation was what the court called the "mere location" rule. That rule, the court said, "would permit finding causation from evidence that the train's speed at a 'remote' point in time 'caused' the train to be at the scene of the accident". *Barlett*, 854 S.W.2d at 400. Stating that the mere location rule "violates common sense", the court said:

> While speed at a remote point in time may be a "philosophical" cause of a collision, it cannot be a "legal" cause. The mere location rule cannot be the basis for submitting a claim of violating the speed limit in this, or any future, case.

*Barlett*, at 400.

The commentators are in accord. Blashfield states:

> [E]xcessive speed is judicially significant only where it is a proximate cause of the collision or injury.
>
> Excessive or unlawful speed is not causal merely because it places a vehicle at a particular place at a particular time, but it is causal where it prevents or retards the operator from slowing down, stopping, or otherwise controlling the vehicle so as to avoid a collision.

(Footnotes omitted.) 2 Patrick D. Kelly, *Blashfield, Automobile Law and Practice* § 105.6, at 313-17 (rev. 3d ed. 1979).

Prosser and Keeton ask rhetorically:

> Defendant operates an automobile over five miles of highway at a speed in excess of what is proper, and so arrives at a point in the street just at the moment that a child unexpectedly darts out from the curb. Is speed a cause of the death of the child?

W. Page Keeton et al., *Prosser and Keeton Torts* § 41, at 264 n.6 (5th ed. 1984). In the accompanying text, Prosser and Keeton explain:

> ██f the defendant drives through the state of New Jersey at an excessive speed, and arrives in Philadelphia in time for the car to be struck by lightning, speed is a cause of the accident, since without it the car would not have been there in time; and if the defendant driver is not liable to a passenger, it is because in the eyes of the law the negligence did not extend to such a risk. The attempt to deal with such cases in the language of causation leads often to confusion.

(Footnotes omitted.) *Prosser and Keeton on Torts* § 41, at 264.[10]

██    Washington law is also in accord. A number of cases have said that speed in excess of that permitted by statute or

---

[10]One of the cases cited by Prosser and Keeton, *Doss v. Big Stone Gap,* 145 Va. 520, 134 S.E. 563 (1926), is interesting because of its facts. The defendant Town maintained an aviation park, which it held open to both airplanes and the motoring public. The street leading to the park became "practically impassable for automobiles", allegedly as a result of the Town's negligence. *Doss,* at 522. The Town provided a detour, and the plaintiff was using that detour when his car was rearended by an airplane trying to land at the park. The plaintiff's estate sued the Town, apparently on the theory that but for the Town's negligence in maintaining the street, he would not have been using the detour, and but for using the detour, he and the airplane would not have been at the point of impact at the same time. The court held that the Town's negligence in maintaining the street was not a proximate cause of the accident.

ordinance is not a proximate cause of a collision if the favored driver's automobile is where it is entitled to be, and the favored driver would have been unable to avoid the collision even if driving at a lawful speed. *E.g., Grobe v. Valley Garbage Serv., Inc., supra; Bohnsack v. Kirkham, supra; White v. Greyhound Corp., supra; Theonnes v. Hazen, supra.* A necessary corollary is that speed is not a proximate cause if it does no more than bring the favored and disfavored drivers to the same location at the same time, and the favored driver has the right to be at that location (*i.e.*, the favored driver has the right of way). *See Whitchurch v. McBride, supra* (favored driver's speed of 43 m.p.h. in a 25 m.p.h. zone brought vehicles to same location at same time; evidence insufficient to go to jury).

According to the foregoing authorities, a claimant can demonstrate cause in fact by showing that "but for" the favored driver's speed, the favored and disfavored drivers each would have reached (and safely crossed) the point of impact at a different time (*i.e.*, the vehicles "would have cleared", or the vehicles "would have missed"). However, a claimant cannot demonstrate legal cause by showing only this much. Virtually without exception, the authorities hold that if excessive speed does no more than bring the favored and disfavored drivers to the same location at the same time, the excessive speed is "remote" rather than "proximate", and causation is not established.

At least three reasons underlie this result. One involves speed. Suppose, for example, the facts alleged in this case. Cronrath testified that Mills would have missed Channel if he had been driving the legal speed limit of 35 instead of 51 m.p.h. Mills would also have missed Channel, however, if he had been driving 10, 15, 85 or 110 m.p.h. Thus, it cannot rationally be said that Mills hit Channel because Mills was driving over the speed limit; rather, it can only be said that Mills hit Channel because Mills was not driving at a speed *different from* (*i.e.*, either above or below) 51 m.p.h. The *Sugar Notch* court expressed this idea by stating, "The same thing might as readily have happened to a car running

slowly, or it might have been that a high speed alone would have carried him beyond the [point of impact] to a place of safety." *Sugar Notch*, at 348-49.

Another reason involves location. Suppose, for example, that a favored driver maintains an unreasonable and excessive speed from milepost 1 to milepost 60. After milepost 60, the favored driver maintains a safe and reasonable speed, but he nevertheless collides with the disfavored driver at milepost 100. If excessive speed could be a legal or "proximate" cause merely because it brings the favored and disfavored drivers to the same place at the same time, the speed between mileposts 1 and 60 would be a basis for liability. Unanimously, however, the authorities deem speed at a "remote" location to be insufficient to establish causation. An example is the *Barlett* case, in which the court said (1) that the "mere location" rule "would permit finding causation from evidence that the train's speed at a 'remote' point in time 'caused' the train to be at the scene of the accident", and (2) that "[t]he mere location rule cannot be the basis for submitting a claim of violating the speed limit in this, or any future, case." *Barlett*, 854 S.W.2d at 400. *Accord Prosser and Keeton on Torts* § 41, at 264.

A third reason involves distance. When a court is interested in whether a reasonable person would have been able to brake or swerve between the place at which he or she would have perceived danger (the "point of notice") and the place of the collision (the "point of impact"), it must focus on the distance between those two points. However, when a court is interested only in whether the vehicles would have cleared each other, it has no more reason to focus on the distance between point of notice and point of impact (here, not more than 94 feet) than to focus on any other distance (*e.g.,* 300 yards, 3 miles, or 10 miles). *See Whitchurch v. McBride*, 63 Wn. App. at 277.

Nothing said so far means that a claimant cannot prove causation (*i.e.,* both cause in fact and legal cause) by showing that but for excessive speed, the favored driver, between the point of notice and the point of impact, would have been

able to brake, swerve or otherwise avoid the point of impact.[11] To make this showing, however, a claimant must produce evidence from which the trier of fact can infer the approximate point of notice, *Whitchurch v. McBride*, at 275-77,[12] and perhaps other facts as well.[13]

With this understanding of the substantive law, we turn now to whether Channel's offer was relevant. Evidence is relevant if it has any tendency to prove a fact of consequence to the action. ER 401. Thus, our task is to analyze whether Channel's offer had any tendency to prove a fact of consequence to the action.

In making our analysis, we assume that Mills had the green light and Channel the red. Cronrath's testimony was

---

[11]We do not mean to imply that there are not other ways in which a claimant can demonstrate that a favored driver's speed satisfies the principles of causation. Assuming there are, none are suggested here.

[12]*Whitchurch* illustrates the principles herein discussed, even though we failed to distinguish clearly between cause in fact and legal cause. The plaintiff in *Whitchurch* was the disfavored driver. The defendant was the favored driver, and the collision took place at an uncontrolled intersection. At the end of the plaintiff's case, the defendant moved to dismiss, as a matter of law, for the failure to prove causation. The trial court granted the motion, and we affirmed, essentially for two reasons.

First, "The plaintiff offered no evidence tending to show the approximate point at which a reasonable person driving westbound on Pacific would have (a) seen [the disfavored driver's] car approaching from the south and (b) realized that it was not going to yield." *Whitchurch*, at 277. In other words, the plaintiff failed to produce evidence from which to infer the point of notice, and without such evidence, a rational trier of fact could not infer that the favored driver, but for excessive speed, could have braked, swerved or otherwise avoided the point of impact. Thus, plaintiff failed to prove cause in fact, in the sense of proving that the favored driver could have braked between point of impact and point of notice, but for his speed. *See Whitchurch*, at 275-77.

Second, the plaintiff did offer evidence supporting inferences that the defendant had been going 43 m.p.h. in a 25 m.p.h. zone, and that the defendant's car would have missed the plaintiff's car if the defendant had been going the speed limit of 25 m.p.h. Even if this evidence showed cause in fact, however, it could not show legal or "proximate" cause. Thus, it was insufficient to prove causation, and insufficient to warrant submission of the case to the jury. *See Whitchurch*, at 277.

[13]We do not address such facts today, but they arguably include the approximate point of impact and a reasonable driver's approximate reaction and/or braking distance.

offered to show Mills' excessive speed, and Mills' excessive speed was immaterial if Mills had the red light.

In all other respects, we take the evidence in the light most favorable to its proponent, Channel. Thus, we assume, as Cronrath testified, (1) that Mills was driving 51 m.p.h. in a 35 m.p.h. zone; (2) that if Mills had been driving 35 m.p.h., the vehicles "would have cleared"; (3) that the point of notice was 94 feet north of the point of impact;[14] and (4) that a reasonable person would have needed 1.75 seconds of reaction time.[15] Like Cronrath, we use the term "reaction time" to mean the time from the point of notice[16] to the time when the brakes are first applied.[17]

Given these assumptions, we hold that Channel's offer was irrelevant to the extent it tended to prove that the vehicles "would have cleared" if Mills had been driving 35 m.p.h. instead of 51 m.p.h. The offer tended to prove that Mills' excessive speed brought him and Channel to the same location at the same time. According to the above authorities, a cause of that nature is not a legal or "proximate" cause. Thus, evidence showing a cause of that nature does not tend to prove a fact of consequence to the action, and such evidence is not relevant. ER 401, 402.

Channel's offer was also irrelevant to the extent it was offered to prove that if Mills had been driving 35 m.p.h., he would have been able to brake, swerve or otherwise avoid

---

[14]According to Cronrath, 94 feet north of the point of impact was the point at which a reasonable person in Mills' shoes would have seen Channel. However, it was not necessarily the point at which a reasonable person would have realized Channel was not going to yield. Thus, it may or may not have been the point of notice. We use it here because it represents that interpretation of the evidence most favorable to Channel.

[15]We do not imply that this is or is not a correct reaction time. We use it simply because it is the time used by the witness in this case.

[16]As explained above, we use "point of notice" to mean the point at which a reasonable person in Mills' shoes would have (a) seen Channel's car and (b) realized that it was not going to yield. *Whitchurch v. McBride*, 63 Wn. App. at 277; *Kilde v. Sorwak*, 1 Wn. App. 742, 747, 463 P.2d 265, *review denied*, 77 Wn.2d 963 (1970).

[17]The record does not show the braking time that a reasonable person would have needed, but the omission is not material.

the collision between the point of notice and the point of impact. As noted already, we assume the point of notice was 94 feet north of the point of impact. At 35 m.p.h., a car traverses more than 51 feet per second. Allowing 1.75 seconds of reaction time, Mills' car traversed 90 feet before he could begin braking. This left 4 feet and .08 of a second within which to avoid the collision. There is no reasonable inference that a reasonable person could have done that, and thus no reasonable inference that Mills' speed was a cause in fact in any way other than causing him and Channel to arrive at the same place at the same time. We conclude that Channel's offer of proof was properly excluded by the trial court. *Theonnes v. Hazen, supra; Kilde v. Sorwak,* 1 Wn. App. 742, 748, 463 P.2d 265, *review denied,* 77 Wn.2d 963 (1970).

## II

At trial, Anderson testified that he hit his brakes because he saw that Channel was going to run the red light for westbound traffic. Channel claimed, however, that bushes and shrubs blocked Anderson's view to the east as he was driving south in the westerly lane of St. James. Thus, Channel said, Anderson could not have braked because he saw her. Rather, he must have braked because he (and thus Mills also) had the red light.

To show that Anderson could not see to the east, Channel offered two photos, labeled exhibit 40, for the purpose of showing what a driver southbound in the westerly lane of St. James can see to the east as he or she approaches N.E. 54th. Channel indicated the photos were taken in August 1987, and showed the trees and shrubs along St. James with about the same foliage as on the date of the accident. Mills argued that the trees and shrubs had grown for a year since the accident, and were "one foot to two feet" higher than on the date of the accident.[18] The trial court rejected the photos, in part because there was other evidence on the same point.[19]

---

[18]Report of Proceedings (Jan. 16, 1992), at 7.

[19]The trial court also may have ruled that the photos were unreliable because they were taken with a telephoto lens and thus subject to distortion. See Report

■ A trial court has discretion concerning the admissibility of photographs, and unless it abuses its discretion, its ruling will not be disturbed on appeal. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 283, 840 P.2d 860 (1992). Here, "[t]he jury heard a thousand words from many different witnesses as to the fact that Anderson could not have seen through the brush and trees on the northeast corner of the intersection."[20] Also, the trial court admitted other photos of the accident scene taken from ground level,[21] and one or more depictions of the scene from an aerial perspective.[22] The record does not contain these other photos and depictions, and thus it does not contravene the trial court's determination that the photos in exhibit 40 were cumulative and unnecessary. We conclude that no abuse of discretion has been shown.

## III

During trial, Mills called a witness named Howard Pendell. Pendell testified that he was a consulting engineer not licensed in Washington. He also testified that he was a self-employed accident reconstructionist who had worked on 600 to 700 cases since 1979. Channel objected to his testimony because he was not licensed in this state, but the trial court overruled.

■■ Generally, the trial court has discretion regarding an expert's qualifications, and its exercise of discretion will not be reversed so long as the expert's qualifications are "fairly debatable". *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979). It is error, however, to exclude the testimony of an expert *solely* because he or she is not licensed

---

of Proceedings (Jan. 16, 1992), at 11 ("For the density of the brush, telephoto would distort."). The record is unclear, however, on whether the trial court was referring to proposed exhibit 40, or to other photos that Channel was offering at the time. See Report of Proceedings (Jan. 16, 1992), at 6-16.

[20]Br. of Appellant, at 24-25.

[21]The record is not clear on how many such photos were admitted, but an exhibit list filed by the trial court would indicate about eight.

[22]We cannot tell whether these were aerial photos, charts, diagrams, or some other type of depiction.

in this state. Thus, in a legal malpractice case in which a party wanted to call as an expert an attorney not licensed in this state, the Supreme Court said:

> we find the stated basis for the rejection of the proffered testimony to be the fact that he was not admitted to the Washington bar. We hold that a lawyer not admitted to the Washington bar is not, per se, unqualified as an expert witness in a legal malpractice action in this state. In the instant case, the fact that Allan Brotsky is not licensed to practice in this state should go to the weight, not the admissibility of his testimony, assuming he is otherwise qualified.

*Walker*, at 858-59.[23]

Channel argues that *Kelly v. Carroll*, 36 Wn.2d 482, 219 P.2d 79, 19 A.L.R.2d 1174, *cert. denied*, 340 U.S. 892 (1950) stands for the proposition that an expert not licensed in this state cannot testify in the courts of this state. However, we agree with Tegland's reading of *Kelly*. He says:

> In dictum, the court has stated that licensed witnesses are presumed to be experts in their licensed fields, but that the qualifications of unlicensed experts must be judged in each individual instance.

(Footnote omitted.) 5A Karl B. Tegland, Wash. Prac., *Evidence* § 290, at 388 (3d ed. 1989).

Based on *Walker*, we think the trial court was not entitled to exclude Pendell's testimony solely because he was not licensed in this state. Based on *Kelly*, we think the trial court was required to judge his qualifications individually, which it did. The adequacy of Pendell's qualifications was a matter of weight for the jury, and the trial court did not abuse its discretion in admitting his testimony.

Affirmed.

SEINFELD, C.J., and ALEXANDER, J. Pro Tem., concur.

---

[23]*Walker* involved a maritime claim, and thus "a federally created cause of action". *Walker*, at 859. We do not think, however, that it is distinguishable from this case on that ground. Just as the principles inherent in a federally created cause of action span state lines, so do the principles inherent in accident reconstruction.