[No. 19184-9-II.   Division Two.   October 25, 1996.]

MAGDALENA E. HOLMES, *as Guardian, Respondent*, v. LARRY DALE WALLACE, ET AL., *Appellants*.

*Timothy R. Gosselin* and *Burgess, Fitzer, Leighton & Phillips, P.S.*, for appellants.

*David A. Bufalini*; and *Stephen L. Bulzomi* and *Messina Law Firm*, for respondent.

ARMSTRONG, J. — Larry Wallace struck Anna Wozney while she walked her dog early one morning. A jury found Wallace 45 percent at fault for the accident. Wallace appeals the verdict, arguing that (1) he was entitled to a judgment as a matter of law because Wozney produced no evidence that a reasonable person could have avoided the accident by traveling slower and using high beams; (2) the trial court erred in issuing a "speed for special hazard" instruction; (3) the trial court erred in issuing "high beam" instructions; (4) the trial court erred in refusing his proposed instruction that pedestrians have a duty not to step into oncoming traffic; and (5) the trial court erred in excluding testimony that other drivers along the road did not use their high beams. Because Wozney produced sufficient evidence from which the jury could find that excessive speed was a proximate cause of the accident, and because the trial court's instructions were proper, we affirm.

## FACTS

At about 7:00 a.m. on October 22, 1991, Larry Wallace was driving a pickup truck eastbound in the southern-most lane of Steilacoom Boulevard. Steilacoom Boulevard, a four-lane road with two lanes in each direction, has a posted speed limit of 35 miles per hour. It was dark and the road was wet. Wallace, who was unfamiliar with the road, testified that he was going about 35 miles per hour and had his low beam headlights on. These lights projected 237 feet ahead. Wallace's high beams would have projected at least 430 feet ahead.

At the same time, Anna Wozney, wearing dark clothing, was walking her white dog. Julie Moore, the manager of the apartment complex where Wozney lived, testified that Wozney walked her dog in the early morning and routinely

crossed Steilacoom Boulevard, from north to south, in a straight line. She also routinely kept her dog on a short leash while crossing the road.

Wallace testified that he saw a white dog, moving from his left to his right, in his lane of travel. He immediately hit the brakes and began skidding. The dog continued to move across his lane of travel, but he did not see Wozney until an instant before he struck her in his lane of travel. Wozney was seriously injured in the accident and has no recollection of the events. Wozney was not in a crosswalk when she was hit. The dog was not struck.

Wallace's pickup truck left skid marks 123 to 135 feet long. From this and other information, Wozney's expert, Richard Cook, testified that Wallace was driving at least 43 miles per hour when he applied his brakes. Assuming a reaction time of 1.5 seconds, Cook testified that Wallace traveled 220 feet from where he first saw the dog to where the pickup truck stopped, and that at 35 miles per hour, he would have stopped just before the gravel driveway where Wozney was crossing. Cook, however, admitted that he could not determine where Wozney was or what she was doing just before the impact.

At the close of Wozney's case, Wallace moved for a judgment as a matter of law, arguing that Wozney had not presented evidence sufficient to show the point where a reasonable person would have seen Wozney and realized that she was not going to yield the right-of-way. The court denied this motion and again after the renewal of the motion at the close of evidence. The jury returned a verdict that Wallace was 45 percent at fault, and he appeals.

## ANALYSIS

1. Excessive Speed and Proximate Cause

Wallace contends that his motion for a judgment as a matter of law should have been granted because Wozney did not present sufficient evidence to demonstrate that his speed was a proximate cause of the accident.

■■ An appellate court, reviewing the denial of a motion for judgment as a matter of law, applies the same standard as the trial court. *Wright v. Engum*, 124 Wn.2d 343, 356, 878 P.2d 1198 (1994). In ruling on such a motion, the nonmoving party's evidence, together with all reasonable inferences that may be drawn from it, must be accepted as true. *Industrial Indem. Co. of the N.W., Inc., v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990). The court may grant the motion only if, as a matter of law, there is neither substantial evidence nor reasonable inference from the evidence to sustain the verdict. *Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992). If the evidence allowed reasonable minds to reach conclusions that sustain the verdict, the question was one for the jury. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978).

■■ The "proximate" cause of an accident consists of cause in fact and legal cause. *Christen v. Lee*, 113 Wn.2d 479, 507, 780 P.2d 1307 (1989). A cause in fact is a cause but for which the accident would not have happened. *Christen*, 113 Wn.2d at 507. The plaintiff has the burden of proving that the defendant's negligence was a cause in fact of the accident. *Whitchurch v. McBride*, 63 Wn. App. 272, 275, 818 P.2d 622 (1991), *review denied*, 118 Wn.2d 1029 (1992).

■ Under Washington law, speed is not a proximate cause of an accident if it does no more than bring the favored and the disfavored parties to the same location at the same time. *Channel v. Mills*, 77 Wn. App. 268, 277, 890 P.2d 535 (1995). But a plaintiff can prove proximate cause by demonstrating that, but for excessive speed, the favored driver, between the point of notice and the point of impact, would have been able to brake, swerve or otherwise avoid the impact. *Channel*, 77 Wn. App. at 278-79. To make this showing, a plaintiff must produce evidence from which the trier of fact can infer the approximate point of notice, i.e., the point at which the favored driver should have seen the disfavored driver or

pedestrian and realized that he or she was not going to yield the right of way. *Channel*, 77 Wn. App. at 279 n.13; *Whitchurch*, 63 Wn. App. at 276.

Here, the parties agree that Wallace was the favored driver. Accepting the nonmoving party's evidence as true, and all reasonable inferences that may be drawn from this evidence, we hold that Wozney presented sufficient evidence for a jury to find the point of notice and that a slower speed would have avoided the accident. Wallace testified that, upon seeing a white dog in his lane of travel, he immediately hit the brakes. Based upon the length of skid marks and other information, plaintiff's expert estimated that Wallace was driving at least 43 miles per hour when he applied his brakes. The expert further testified that if Wallace had been traveling at the speed limit, 35 miles per hour, he would have stopped just short of Wozney.

The crux of Wallace's argument is that there is no showing that he could or should have seen Wozney at the point where he saw the dog and should have realized that she was not yielding the right of way. Wallace reminds us that the plaintiff's expert conceded that he did not know where Wozney was or what she was doing when Wallace saw the dog. We, therefore, examine the evidence and all reasonable inferences from it on this critical issue.

Wozney introduced habit testimony that she kept her dog on a short lease and crossed Steilacoom Boulevard in a straight line from north to south. From this the jury could have inferred that Wozney was within a few feet of the dog when Wallace saw it. But Wallace argues that there was no evidence as to whether Wozney was walking behind or ahead of the dog. We disagree. The dog was walking from Wallace's left to his right and continued to do so as Wallace slid to a stop. The jury could have reasoned that the dog was not hit because it had already passed out of Wallace's lane. If Wozney had been walking in front of the dog, she would have been even further out of the lane when Wallace passed and she also would have

not been hit. Thus, the jury could reasonably have inferred that Wozney was walking a few feet behind the dog in the same direction, i.e., toward Wallace's lane of travel.

Wallace had his low beam headlights on, apparently because the shield for the high beam warning light on his dash was broken, causing the warning light to shine in his eyes. Wozney presented testimony that the high beams would have added approximately 200 feet of illumination in front and would have improved illumination by 50 percent on the right side and 100 percent on the left side of the vehicle. Based on this evidence, the jury could have found that a reasonable person, using the high beams, would have seen Wozney and realized that she likely was not going to yield the right of way, when Wallace was at the point where he saw the dog.

We conclude, taking all reasonable inferences in favor of the verdict as we must, that the evidence was sufficient for the jury to find that Wallace's excessive speed was a proximate cause of the accident. *See Channel*, 77 Wn. App. at 279. The trial court, therefore, properly denied Wallace's motion for a judgment as a matter of law.

2. Speed for Special Hazard Instruction

Wallace next argues that the trial court erred in giving a speed for special hazard instruction to the jury. An appellate court reviews a trial court's decision to give a requested instruction for abuse of discretion. *Reninger v. Department of Corrections*, 79 Wn. App. 623, 639, 901 P.2d 325 (1995), *review granted*, 129 Wn.2d 1006 (1996). A party has a right to present its theory of the case to the jury if substantial evidence supports the theory. *Thompson v. Berta Enters., Inc.*, 72 Wn. App. 531, 540, 864 P.2d 983, *review denied*, 124 Wn.2d 1028 (1994). The court properly refuses an instruction on speed where (1) excessive speed is not a proximate cause of the accident, or (2) a conclusion of unreasonable speed would be the product of impermissible speculation and conjecture. *Chhuth v. George*, 43 Wn. App. 640, 644, 719 P.2d 562, *review denied*, 106 Wn.2d 1007 (1986).

As we have discussed, the evidence was sufficient to show that excessive speed was a proximate cause of the accident. The jury also heard testimony that it was dark outside and the road was wet. Yet Wallace, who was unfamiliar with the road, was driving with his low beams because of a mechanical problem with his dash. Further, an expert estimated that Wallace was driving at least eight miles per hour over the speed limit when he applied his brakes. This evidence is sufficient to support giving the speed for special hazard instruction.

3. High Beam Instructions

Wallace next contends that the trial court erred in giving high beam instructions because there was no evidence that his failure to use high beams was a cause in fact of the accident. We disagree.

The high beam instruction was supported by the evidence that it was dark and wet, that Wallace was unfamiliar with the road and yet was exceeding the speed limit, that he was not using high beams because of a mechanical problem, and that his visibility would have been substantially improved had he been using high beams. Accordingly, the trial court did not err in giving the high beam instructions.

4. Instruction on Pedestrian Duty not to Step into Oncoming Traffic

Wallace then argues that the trial court erred in failing to give its proposed instruction on a pedestrian's duty not to step suddenly into oncoming traffic.

■ Wallace proposed an instruction based on RCW 46-.61.235(2), which states:

> No pedestrian shall suddenly leave a curb or other place of safety and walk, run, or otherwise move into the path of a vehicle which is so close that it is impossible for the driver to stop.

RCW 46.61.235(2). The Supreme Court discussed this statute in *Jung v. York*, 75 Wn.2d 195, 449 P.2d 409 (1969),

stating, "When the statute refers to a 'curb or other place of safety', it obviously means a place out of the lanes of traffic." *Jung*, 75 Wn.2d at 199; *See also Van Cleve v. Betts*, 16 Wn. App. 748, 755, 559 P.2d 1006 (1977) (pedestrian hit in crosswalk, no evidence that the plaintiff left a place of safety and walked into oncoming car). Here, there was no evidence that Wozney suddenly left a curb or other place of safety just before the collision. Rather, the only reasonable inference from the evidence is that she was in a lane of travel just before the accident; lanes of travel do not constitute places of safety within the meaning of the statute. *Jung*, 75 Wn.2d at 199. Accordingly, the trial court did not abuse its discretion by denying Wallace's proposed instruction.

5. Exclusion of Evidence by the Trial Court

■ Finally, Wallace maintains that the trial court erred in excluding testimony on the use of high beams by other drivers at the accident site. The admission or refusal of evidence lies largely within the sound discretion of the trial court, and its ruling will be reversed only upon a showing of an abuse of discretion. *Hume v. American Disposal Co.*, 124 Wn.2d 656, 666, 880 P.2d 988 (1994), *cert. denied*, 115 S. Ct. 905 (1995). A trial court abuses its discretion when it bases its decision on manifestly unreasonable or untenable grounds. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

■ Here, the trial court excluded testimony by several defense experts that, while they were investigating the amount of light present along the road in preparation for trial, they did not see other cars using their high beams. But these observations did not occur at the same time of day or under the same conditions as the actual accident. Furthermore, the defense was unable to support this evidence with specific data; instead, the experts could only report on their casual observations. The offered evidence, therefore, was speculative and lacked a proper foundation. Accordingly, the trial court did not abuse its discretion in excluding this testimony. *See Havens*, 124 Wn.2d at 169-70

(exclusion of evidence possessing speculative probative value is not reversible error).

Affirmed.

BRIDGEWATER and TURNER, JJ., concur.