# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ALEKSEY ZORCHENKO,

          Appellant,

      v.

CITY OF FEDERAL WAY, a municipal
corporation; and DERRICK BOWERS,
individually,

          Respondents.

_____

DANICA OSTROM,

          Plaintiff,

      v.

DERRICK BOWERS, individually,
CHRISTI ANDERSON, individually,
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ASSURANT,
and VOYAGER INDEMNITY
INSURANCE COMPANY; and the CITY
OF FEDERAL WAY,

          Defendants.

DIVISION ONE

No. 85449-6-I

PUBLISHED OPINION

DWYER, J. — A governmental entity's breach of a duty owed to the public at large is, as a matter of law, insufficient to sustain a tort claim for negligence. Here, the trial court dismissed negligence claims asserted against the City of Federal Way (the City), concluding that, in responding to a nonemergency report of a motor vehicle collision, the City owed a duty to the general public, but not a

specific duty to the individuals who reported the incident.  The trial court did not err in so concluding and granting the City's motion for summary judgment.  We affirm.

I

On the afternoon of August 2, 2020, Aleksey and Nina Zorchenko were travelling on Military Road in Federal Way when their vehicle was struck from behind by a vehicle driven by Danica Ostrom.  No one was injured, and the vehicles sustained only "relatively minor" damage.  The Zorchenkos and Ostrom moved both vehicles off of the roadway and on to the shoulder of the roadway.  Initially, the parties agreed to simply exchange information, but Nina later decided to call 911 for "assistance obtaining a police report" and permission to move the vehicles from the scene of the collision.[1]

Approximately 50 minutes after Nina placed the 911 call, Federal Way Police Officer Joell Giger arrived at the scene of the collision.  Officer Giger parked her patrol vehicle behind both vehicles, at an angle, so that her left front tire was close to the white stripe that marked the outer boundary of the roadway, and the rear of the vehicle extended several feet onto the paved shoulder.  Officer Giger activated three sets of flashing lights to alert oncoming traffic to the vehicles' location on the shoulder.  Because the vehicles were visible to oncoming traffic and did not impede the lanes of travel, Officer Giger did not need to direct traffic.

---

[1] Because the Zorchenkos share the same last name, we use their first names for clarity.

2

The two drivers, Aleksey and Ostrom, were standing on a grassy shoulder beyond the paved shoulder where the vehicles were parked when the police officer arrived. Officer Giger approached them, obtained basic information about the collision, and collected license, registration, and insurance documents from each. She returned to her patrol vehicle to enter the data and prepare a collision report.

A few seconds later, a van driven by Derrick Bowers violently sideswiped Officer Giger's patrol car. The van veered back into the roadway and then turned sharply to the right and struck the Zorchenkos' vehicle, pushing it onto the grassy shoulder, where Aleksey was standing. Officer Giger called for additional law enforcement and medical assistance and then got out of her vehicle. Seeing that Aleksey was pinned underneath the van and was seriously injured, Officer Giger worked to administer emergency medical aid. Additional police officers and emergency medical personnel arrived, extricated Aleksey, and transported him to the hospital.

Aleksey filed suit against Bowers, Ostrom, and the City.[2] As to the City, Aleksey's complaint alleged that its employee, Officer Giger, negligently failed to park her patrol vehicle in a manner that could have avoided the collision with Bowers's van or mitigated its impact. In a later-filed declaration, Aleksey also asserted that Officer Giger negligently failed to advise him to remain in his vehicle while she prepared the report. Ostrom also filed a complaint against

---

[2] Zorchenko subsequently amended his complaint, adding Ostrom's employer at the time of the collision as a defendant.

Bowers, the City, and others. Ostrom similarly alleged that Officer Giger negligently parked her patrol vehicle. The trial court consolidated the two lawsuits.

The City moved for summary judgment, arguing that the public duty doctrine barred the claims premised on Officer Giger's allegedly negligent response to the reported collision. The trial court granted the City's motion and dismissed the claims against the City.[3] The trial court entered an order certifying the summary judgment order for immediate appeal. See CR 54(b) (allowing trial court to direct entry of final judgment as to one or more, but fewer than all the claims presented, upon findings that there is no just reason for delay).

II

The sole issue presented on appeal is whether the trial court erred in applying the public duty doctrine and dismissing the negligence claims against the City.

When reviewing an order on summary judgment, we engage in the same inquiry as the trial court. Cummins v. Lewis County, 156 Wn.2d 844, 852, 133 P.3d 458 (2006). Summary judgment is proper when the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Cummins, 156 Wn.2d at 852; CR 56(c). We consider all facts and reasonable inferences in the light most favorable to the

_____

[3] The trial court initially granted the City's motion only in part, but later on reconsideration, granted the motion in its entirety.

4

nonmoving party.  Babcock v. Mason County Fire Dist. No. 6, 144 Wn.2d 774, 784, 30 P.3d 1261 (2001).

In a negligence action, a court must determine as a threshold matter, whether an actionable duty was owed to the plaintiff.  Babcock, 144 Wn.2d at 784-85.  That determination is a question of law we review de novo.  Cummins, 156 Wn.2d at 852.

III

In 1961, the legislature enacted a statute waiving the State's sovereign immunity for governmental functions.  LAWS OF 1961, ch. 136 § 1 (codified as RCW 4.92.090).  In 1967, the legislature did the same for local governments.  LAWS OF 1967, ch. 164, § 1 (codified as RCW 4.96.010).  RCW 4.96.010(1) provides, in relevant part:

> All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation.[4]

Under this statute, the liability of local governments under tort law is not unlimited, as governments are liable only to "the same extent" as private parties.  RCW 4.96.010(1); Norg v. City of Seattle, 200 Wn.2d 749, 756, 522 P.3d 580 (2023).  It is well settled that local governments are liable for damages only when they arise from "'official conduct'" that is both tortious and "'analogous'" to

---

[4] The statute has been amended several times but has not changed with respect to the language providing that local governments are liable for tortious conduct "to the same extent as if they were a private person or corporation."  See, e.g., LAWS OF 2011, ch. 258, § 10; LAWS OF 2001, ch. 119, § 1.

conduct that would potentially subject a private person or corporation to liability. Munich v. Skagit Emergency Commc'ns Ctr., 175 Wn.2d 871, 887, 288 P.3d 328 (2012) (Chambers, J., concurring) (quoting United Brethren Church v. State, 67 Wn.2d 246, 253, 407 P.2d 440 (1965)).[5]  The requirement of analogous conduct reduces the scope of liability because governments have a variety of duties mandated by statute or ordinance that private individuals do not.  For example, private entities are not generally required by law to issue permits, conduct inspections, prepare official reports, or maintain the peace, and therefore incur no liability in connection with these types of activities.  Munich, 175 Wn.2d at 887 (Chambers, J., concurring).

To sustain a negligence claim, a plaintiff must establish four elements: duty, breach, proximate cause, and resulting harm.  Mancini v. City of Tacoma, 196 Wn.2d 864, 879, 479 P.3d 656 (2021).  As to the element of duty, courts have historically applied a rule that public officials carrying out duties under municipal law owe a duty to the general public, but have no actionable duty in tort to particular individuals.  Munich, 175 Wn.2d at 888 (Chambers, J., concurring). This rule has become known as the "public duty doctrine" and has been applied broadly in the context of tort actions against state and local government.  Munich, 175 Wn.2d at 888 (Chambers, J. concurring).  To establish a duty in tort against a governmental entity under this doctrine, a plaintiff must show that the duty

_____

[5] In several subsequent decisions, our Supreme Court has recognized Justice Chambers's concurrence in Munich, which expressed the views of five justices, as precedential. See Norg, 200 Wn.2d at 757.

6

breached was owed to an individual, rather than to the public as a whole. Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 549, 442 P.3d 608 (2019).

IV

Zorchenko argues that, regardless of whether Officer Giger's actions are characterized as affirmative acts or as omissions, the 911 call reporting the collision "triggered" a specific duty owed to him by the City and, therefore, as a matter of law, the public duty doctrine does not apply as a bar to his claim.[6] This is so, Zorchenko asserts, because the Supreme Court held in Norg that "9-1-1 responders owe a duty to those at the scene of the call" because placement of a 911 call creates a "special relationship" between the City and those seeking assistance. In so arguing, Zorchenko misinterprets the decision in Norg. And, in any event, the facts here differ from those in Norg in material respects.

In Norg, the Supreme Court addressed whether the public duty doctrine barred a claim of negligence in connection with the City of Seattle's provision of emergency medical services. 200 Wn.2d at 755, 764. Delaura Norg awoke to find her husband in medical distress and called 911. Norg, 200 Wn.2d at 753. Delaura spoke with a dispatcher employed by the City of Seattle, and provided her address. Norg, 200 Wn.2d at 753. The 911 dispatcher assigned three units

---

[6] In the public duty doctrine context, Washington cases distinguish between "misfeasance" and "nonfeasance." Robb v. City of Seattle, 176 Wn.2d 427, 439, 295 P.3d 212 (2013); Mancini, 196 Wn.2d at 885-86. Zorchenko concedes that the City did not owe a duty based on affirmative misfeasance because Officer Giger's actions did not directly cause the harm to him. See Mancini, 196 Wn.2d at 885-86. Nevertheless, Zorchenko argues that the distinction is irrelevant to the analysis here because the City owed a duty to him as an individual, under Norg, which "rejected the application of the public duty doctrine for cases involving 9-1-1 responses." However, for the reasons explained herein, infra, we disagree with Zorchenko's expansive interpretation of Norg.

from two nearby Seattle Fire Department stations and gave them the correct address, which was only three blocks from the nearest station. Norg, 200 Wn.2d at 753. While the dispatcher assured Delaura that help was on the way to her apartment, all three of the dispatched units drove past the apartment and went to a nearby nursing home, from where they assumed the 911 call had originated. Norg, 200 Wn.2d at 753. The first responders eventually reached the Norgs' apartment approximately 16 minutes after Delaura placed the 911 call. Norg, 200 Wn.2d at 753-54. Eventually, the Norgs sued the City of Seattle, alleging that its employees responded negligently to the medical emergency. Norg, 200 Wn.2d at 754. The trial court rejected the City's affirmative defense of the public duty doctrine. Norg, 200 Wn.2d at 754-55. On interlocutory review, we affirmed. Norg v. City of Seattle, 18 Wn. App. 2d 399, 413, 491 P.3d 237 (2021).

Our Supreme Court granted discretionary review and also affirmed. Norg, 200 Wn.2d at 755. The court reiterated that "a governmental entity's breach of a duty owed to the general public cannot sustain a tort claim for negligence as a matter of law." Norg, 200 Wn.2d at 757. In simple terms, the court explained, "If the duty that the government allegedly breached was owed to the public at large, then the public duty doctrine applies; if the duty was owed to an individual, then the public duty doctrine does not apply." Norg, 200 Wn.2d at 758. The court further explained that the public duty doctrine "applies only to claims based on an alleged breach of 'special governmental obligations [that] are imposed by statute or ordinance.'" Norg, 200 Wn.2d at 758 (alteration in original) (quoting Beltran-Serrano, 193 Wn.2d at 549).

The Supreme Court agreed with the Norgs that the public duty doctrine was inapplicable because the City owed a duty to them to exercise reasonable care. Norg, 200 Wn.2d at 763. But the court did not hold, or imply, that the City owed a common law duty of care to the Norgs, as individuals, simply because Delaura dialed 911. Instead, the City owed a duty to the Norgs because it undertook to provide emergency medical assistance to them following an extensive (in that context) interaction with Delaura, and because emergency medical services are not a unique and exclusive governmental function. Norg, 200 Wn.2d at 762, 765. The court agreed that "'the City, through its dispatcher, established a direct and particularized relationship with the Norgs,'" noting that Delaura expressly requested emergency medical assistance, confirmed her address multiple times, remained on the line with the 911 dispatcher for over 15 minutes, and was repeatedly assured by the dispatcher that medical aid was en route. Norg, 200 Wn.2d at 762-63. These facts gave rise to a duty of reasonable care under the rescue doctrine, which "'arises when one party voluntarily begins to assist an individual needing help.'" Norg, 200 Wn.2d at 763 (quoting Folsom v. Burger King, 135 Wn.2d 658, 674-75, 958 P.2d 301 (1998)).

The Norg court also focused on the fact that the provision of emergency medical services is not a "'unique function of government.'" Norg, 200 Wn.2d at 765 (quoting Cummins, 156 Wn.2d at 872 (Chambers, J., concurring)). Therefore, "[s]uch a claim could certainly arise against a private ambulance service." Norg, 200 Wn.2d at 765. The court pointed out that if the public duty doctrine barred the Norgs' claim, it would mean that a governmental entity

9

providing emergency medical services would be subject to less tort liability than a comparable private entity providing the same service, contrary to the mandate of RCW 4.92.010(1).[7]  Norg, 200 Wn.2d at 765.

In contrast to the circumstances in Norg, the City did not undertake to provide "emergency assistance" to the Zorchenkos.  See Norg, 200 Wn.2d at 764.  There is nothing in the record to indicate a prolonged or in-depth interaction with the 911 dispatcher.  The Zorchenkos did not contact the police for the purpose of seeking medical aid, or for any other reason related to their safety.  Instead, Nina called law enforcement because the parties involved in the collision were "unclear of the legal obligations associated with leaving the scene of the accident" and sought assistance with "obtaining a police report."  Nina reported no injuries and the record reflects that she interacted with the 911 dispatcher for approximately two minutes.  There is nothing to suggest that the dispatcher made any assurances to Nina about prioritizing or expediting the response to her request for assistance.

Moreover, police officers may perform an inherently governmental function with duties set forth by statute when they respond to the scene of a motor vehicle collision.  Police officers are generally responsible for the enforcement of state

---

[7] That the government's tort liability is "to the same extent" as the liability of private entities is a statutory mandate and a critical aspect of the analysis in Norg.  RCW 4.96.010(1). Contrary to Zorchenko's claim in reply, the Supreme Court has not "rejected" a "distinction . . . as between the liability of public versus private entities."  To support his claim that this part of the statute is no longer a part of the public duty doctrine analysis, Zorchenko relies on H.B.H. v. State, 192 Wn.2d 154, 179-180, 429 P.3d 484 (2018), a case involving negligence claims against a state agency for the failure to protect former foster children against tortious or criminal conduct perpetrated by adults to whom the children were entrusted.  But in H.B.H., the Supreme Court merely acknowledged that while official conduct must be analogous to chargeable misconduct of a private party, an exact, "direct counterpart in the private sector" is not required.  H.B.H., 192 Wn.2d at 180.

criminal and traffic laws. RCW 10.93.070. RCW 46.52.070(1) specifically requires that a police officer who is "present at the scene of any accident" or is "in possession of any facts concerning any accident" through investigation, "shall" make a report. A police officer must investigate and include specific information in the report when a collision results in fatality or serious injury. RCW 46.52.070(2), (3). Police officers arriving at the scene of a collision have statutory authority to demand proof of legally-required documents, to impound vehicles, and to issue traffic citations upon a determination that a driver involved in a collision committed a traffic infraction. RCW 46.30.020, RCW 46.32.060; RCW 46.63.030(1)(c). Police officers are also authorized by statute to direct traffic at the scene of an accident and to penalize a failure to comply. RCW 46.61.015.

In contrast, local governments are authorized, but not required by statute, to provide emergency medical services. RCW 35.21.766(2) (cities and towns may establish ambulance services upon a determination that the municipality is inadequately served by existing services). Various private entities, such as hospitals, private ambulance services, individuals, and corporations may also provide emergency medical services and, in fact, as RCW 35.21.766 implies, those services are primarily delivered by private entities. Cummings, 156 Wn.2d at 872 (Chambers J., concurring). Since both public and private entities provide emergency medical services, when the local government handles such a request, it does not perform an inherent governmental function and must be

11

accountable for tortious conduct to the same degree as a private entity. Cummings, 156 Wn.2d at 872 (Chambers, J., concurring).

Zorchenko does not appear to dispute that responding to and investigating a reported motor vehicle collision is an exclusive and inherent governmental function or that Officer Giger's duties were governed by statute.[8] The statutory mandates involved in responding to the scene of a collision apply only to governmental actors and no law authorizes private entities to perform comparable functions. Because the City's employee was performing a function that was required by statute and owed a duty to the public at large, the trial court did not err in concluding that the public duty doctrine applied and dismissing the claims against the City.

Affirmed.

_____
Dwyer, J.

I CONCUR:

_____
Smith, C.J.

_____

---

[8] Zorchenko also does not appear to contend that any of the exceptions to the public duty doctrine developed over the years by decisional law—legislative intent, failure to enforce, rescue doctrine, or special relationship—are applicable. See Norg, 200 Wn.2d at 758.

*Zorchenko v. City of Federal Way*, No. 85449-6-I

FELDMAN, J. (CONCURRING) — While I agree with the reasoning and holding of the majority opinion, I write separately to clarify the proper enumeration of elements of a negligence claim. Citing *Mancini v. City of Tacoma*, 196 Wn.2d 864, 879, 479 P.3d 656 (2021), the majority states, "To sustain a negligence claim, a plaintiff must establish four elements: duty, breach, proximate cause, and resulting harm." A more precise formulation would identify five discrete elements: duty, breach, cause in fact (also referred to as factual causation), legal causation (also referred to as proximate cause or scope of liability), and harm (also referred to as injury or damages).

Where I diverge most clearly from the four-element formulation in *Mancini* is with regard to causation. In deciding whether the tortfeasor's breach caused the victim's harm, Washington law distinguishes between cause in fact and legal causation. Cause in fact "refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985). Legal causation, in contrast, "rests on policy considerations as to how far the consequences of defendant's acts should extend" and "involves a determination of whether liability should attach as a matter of law *given the existence of cause in fact*." *Id.* (emphasis added). Legal causation thus recognizes that at some point the "actual" cause of an injury cannot be said to be its "proximate" cause. *See id.* (even where cause in fact is proved, "determination of legal liability will be dependent on 'mixed considerations of logic, common

sense, justice, policy, and precedent'") (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)).

The four-element formulation in *Mancini* lists duty, breach, proximate cause, and harm, but does not specifically reference cause in fact. Numerous other decisions adopt this same formulation, which dates back several decades. *E.g.*, *Hansen v. Washington Nat. Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981) ("Negligence in common law consists of (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury.") (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975)). In earlier cases like *LaPlante*, the court recited a three-element formulation (duty, breach, and resulting injury), and then added: "For legal responsibility to attach to the negligent conduct, the claimed breach of duty must be a proximate cause of the resulting injury." 85 Wn.2d at 159. In both formulations, cause in fact is not specifically included in the recitation of elements.

To ameliorate this omission, numerous Washington opinions recite that "Washington law recognizes two elements to proximate cause: Cause in fact and legal causation." *Hartley*, 103 Wn.2d at 777. Thus, rather than expressly add a fifth element and clearly delineate cause in fact and legal causation, our courts have reinterpreted one of the elements—"proximate cause"—to include that fifth element. But while our Supreme Court has recited this reformulation of proximate cause, it has acknowledged that "[s]ome confusion probably has been generated by the imprecise use of the term 'proximate cause' to encompass cause in fact and

legal causation alone or in combination." *Id.* at 778. Division Two of this court has quoted this portion of *Harley*, adding "We agree." *Channel v. Mills*, 77 Wn. App. 268, 273 n.9, 890 P.2d 535 (1995).

To illustrate this confusion, the court in *Hartley* recounts its analysis in *LaPlante*, where it "affirmed a summary judgment dismissal of defendant for lack of proximate cause without clarifying that it was more precisely characterized as a lack of cause in fact." *Hartley*, 103 Wn.2d at 778 (citing *LaPlante*, 85 Wn.2d at 159). The court also notes that "Washington Pattern Instruction 15.01 refers to proximate cause in its factual context" and provides a definition—"a cause which in a direct sequence, unbroken by any new independent cause, produces the [injury] [event] complained of and without which such [injury] [event] would not have happened"—which "relates to cause in fact" and not legal causation. *Id.* Division Two similarly recognized in *Channel* that this confusion "is embodied in Washington Pattern Instruction 15.01." 77 Wn. App. at 273 n.9. Thus, while the proper enumeration of causation elements may seem trivial, it is a potential source of confusion in both judicial opinions and pattern instructions and thus affects judges, practitioners, and jurors alike.

Professor David Owen, in an article appropriately titled, "The Five Elements of Negligence," recognizes this same confusion. Relevant here, he emphasizes that "[p]roximate cause, though linked to cause in fact, is a separate element unto itself." David G. Owen, *The Five Elements of Negligence*, 35 HOFSTRA L. REV. 1671, 1681 (2007). And while Professor Owen acknowledges that "proximate cause" is "often used to describe both causal issues, factual and proximate alike,"

3

he adds that the resulting "terminological confusion means . . . that a lawyer reading judicial decisions discussing 'proximate cause' . . . needs to be on guard for the possibility that the court actually may be addressing the issue of cause in *fact*, not proximate cause at all." *Id.* at 1682. This is precisely the confusion that our Supreme Court recognized in *Hartley* and Division Two acknowledged in *Channel*.

There is, fortunately, an easy solution to this terminological confusion, which Professor Owen wisely advocates: courts should adopt the "five element formulation" because "each of the five components is complex and conceptually distinct, and because all must coexist or a negligence claim will fail." *Id.* at 1673. This approach is consistent with the Third Restatement of Torts, which similarly states "the five elements of a prima facie case for negligence" as "duty," "failure to exercise reasonable care," "factual cause," "physical harm," and "harm within the scope of liability (which historically has been called 'proximate cause')." RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 6 cmt. b (2010). It also harmonizes cases like *Mancini*, which recite a four-element formulation that excludes cause in fact, and cases like *Hartley*, which recognize that "Washington law recognizes two elements to proximate cause: Cause in fact and legal causation." 103 Wn.2d at 776. And if carried through to our pattern jury instructions, the five-element formulation would also alleviate juror confusion.

In short, to address the existing confusion regarding the proper delineation of the elements of a negligence claim, I would clarify that to prove a negligence claim a plaintiff must establish five elements: duty, breach, cause in fact, legal

causation, and resulting harm. While cause in fact and legal causation are "two peas" that "reside together in the same pod," they "remain two separate peas." Owen, *supra* at 1674. We should treat them as such. With these observations, I respectfully concur.

Feldman, J.