[No. 41362-1-II.   Division Two.   June 1, 2012.]

COLIN BOWERS, *Appellant*, v. PAMELA M. MARZANO ET AL., *Respondents*.

*George H. Luhrs*, for appellant.

*Donald G. Daniel Jr.* (of *Law, Lyman, Daniel, Kamerrer & Bogdanovich PS*), for respondents.

¶1 JOHANSON, J. — Colin Bowers rode as a passenger in an automobile that failed to yield the right-of-way to a speeding favored driver, Pamela Marzano. Marzano's vehicle collided with Bowers's, and Bowers suffered significant injuries that he alleges Marzano could have prevented or minimized had she driven with proper attentiveness. The trial court granted summary judgment for Marzano, concluding that Bowers failed to establish Marzano's point of notice. We hold that a genuine issue of material fact exists regarding Marzano's point of notice, sufficient to avoid summary judgment, and thus Bowers should have the opportunity to demonstrate to a jury that Marzano's speed or negligence not only proximately caused the accident but also contributed to his enhanced injuries. Accordingly, we reverse and remand for trial.

## FACTS

### I. THE ACCIDENT

¶2 In August 2008, Pierce County sheriff's deputies responded to a two-car collision at the intersection of 152nd Street East, running east/west without a stop sign, and 66th Avenue East, running north/south with a stop sign. Walter Bowers (Walter),[1] the driver on 66th Avenue East, failed to stop at the stop sign and performed a "California stop" before driving a Subaru through the intersection. Clerk's Papers (CP) at 47. Marzano, driving a truck traveling on 152nd Street East, then collided with the passenger side of the Subaru before both vehicles spun off the road.

---

[1] For clarity, we refer to Colin Bowers as "Bowers" and his brother, Walter Bowers, as "Walter." We intend no disrespect.

¶3 Bowers, seated in the Subaru's front passenger seat, suffered severe head injuries. At the scene, Marzano told deputies that Walter "blew through the stopsign [sic]" without stopping. CP at 284.

¶4 Niccole Johnson saw the Subaru as it approached the stop sign and said it could not have been traveling any faster than 10 MPH. But she looked away from the intersection when the Subaru was roughly 10 feet from the stop sign, so she did not witness the collision. At the accident scene, deputies found the Subaru in first gear.

¶5 Walter pleaded guilty to vehicular assault as a result of the accident.

## II. PROCEDURAL FACTS

### A. Summary Judgment

¶6 Bowers sued Marzano for damages resulting from Marzano's negligence based on inattentiveness and speeding. A yellow caution sign warning drivers of an upcoming intersection was posted roughly 200 feet before the intersection on 152nd Street East. The posted speed limit on 152nd Street East was 35 MPH. Marzano's vehicle accident reconstruction expert, John Hunter, declared in an affidavit that Marzano collided with the Subaru while speeding at 39 MPH. Bowers's expert, Walter Becinski, declared in an affidavit that Marzano was speeding at 41 MPH.

¶7 To reconstruct the accident, Becinski analyzed data from various sources: he visited the accident scene; he reviewed the sheriff's department's investigative reports and scene diagram of the accident; he reviewed photographs of the accident and surrounding roadways; and he examined electronic data retrieved from Marzano's truck, Marzano's deposition, and various witness declarations. Becinski also established several facts based on the SLAM (Simulated Linear Accident Momentum) accident simulation program, which uses, among other things, vehicle

weights, angles approaching the crash, tire marks, and the place where vehicles come to rest to calculate the force and momentum necessary for vehicles to move the way they did postcrash. First, Becinski opined that Marzano was not driving attentively before the accident, which resulted in her delayed reaction to seeing the Subaru enter the intersection.[2] The crash data retrieval (CDR) information obtained from Marzano's truck indicated that she maintained steady revolutions per minute (RPM) immediately before the accident. And crash scene photos revealed no tire marks until just five feet before the site of impact. Therefore, Marzano did not heed the caution the intersection warning sign suggested and was not watching for intersection traffic as advised. Becinski ultimately concluded that had Marzano been driving with reasonable vigilance as she approached the intersection, she would have slowed and been prepared to react to crossing traffic; as a result, she would have seen the Subaru run the stop sign at the first possible moment and would have begun braking within 0.67 seconds.

¶8 Second, Becinski calculated that had Marzano driven attentively and braked when the Subaru passed through the stop sign into the intersection, she would have had 2.53 seconds to react and stop.[3] Bowers asserted that this 2.53 seconds constituted Marzano's point of notice. Becinski arrived at 2.53 seconds based on his SLAM program analysis, a video recreation of the Subaru's approach to the intersection, evidence that the Subaru was in first gear, and Johnson's estimate that the Subaru drove less than 10 MPH as it approached the stop sign.

¶9 Third, Becinski determined that even driving 41 MPH, an alert Marzano could have braked to avoid any collision

---

[2] During her deposition, Marzano admitted that she "did not pay particular attention to any warning signs on the day of that accident." CP at 117.

[3] Becinski calculated 2.53 seconds by determining that it would have taken the Subaru 2.53 seconds to travel from the stop sign to the point of impact, if it drove 15 MPH.

had she driven attentively and reacted when she noticed the Subaru crossing the intersection.[4] At 41 MPH, an attentive Marzano would have begun braking in 0.67 seconds; consequently, she would have begun braking 111.8 feet before the intersection. Had she done this, Marzano would have stopped in 74.9 feet, leaving over 36 feet between her truck and the Subaru.[5] Becinski further added that Marzano should have slowed to 30 MPH at seeing the intersection warning sign, and Bowers supports this opinion with the Washington Department of Licensing's *Washington Driver Guide*. The *Washington Driver Guide* states that intersection warning signs "warn you to slow down and be prepared to stop if necessary." CP at 112.

¶10 Marzano moved for summary judgment, asserting that Walter was solely responsible for his brother's injuries because Walter failed to stop at the stop sign and yield the right-of-way. Marzano further asserted that Bowers failed to present evidence that Marzano owed or failed to meet a duty whose breach proximately caused the accident.

¶11 The trial court granted summary judgment for Marzano,[6] reasoning that Becinski's data did not adequately show where Marzano "would have had notice that Bowers was going to disregard the signage and was going to enter the intersection." Verbatim Report of Proceedings (VRP) (Apr. 30, 2010) at 39.

¶12 Bowers moved for reconsideration. He argued that a Subaru traveling 15 MPH would have taken 2.53 seconds to

[4] During her deposition, Marzano said she saw the Subaru go through the stop sign but she did not brake.

[5] Marzano traveled at 41 MPH, or 60.133 feet/second. After subtracting her reaction time (0.67 seconds) from the total time from point of notice to impact (2.53 seconds), Marzano would have had 1.86 seconds to avoid the collision. 60.133 feet/second x 1.86 seconds = 111.8 feet.

[6] In making its determination on the motion for summary judgment and motion for reconsideration, the trial court considered the declarations of Marzano, Hunter, Don Daniel (Marzano's attorney), Johnson, Kenneth Breit (filmmaker), Colin Daly (biomechanical engineering expert), Dawn Edwards (owner of the Subaru), Becinski, and George Luhrs (Bowers's attorney).

go from the stop sign to the point of the collision—or two seconds from the point the car was halfway through the stop sign. Bowers argued that the 2.53 seconds provided sufficient notice to Marzano to react. Again, the trial court denied Bowers's motion for reconsideration because the calculations were "in the realm of speculation" and not suitable for trial. VRP (May 28, 2010) at 64.

## B. Enhanced Injuries

¶13 Before the trial court granted summary judgment, Bowers presented the declaration of Colin Daly, an expert in biomechanical engineering, which included the medical consequences of varying impacts on the human brain. Daly reviewed the sheriff's department's investigative reports and accident scene photos, Bowers's medical record, and the damaged Subaru. He assumed that the impact causing Bowers's head injury resulted from a collision in which Marzano's truck hit the Subaru at a 270-degree angle with the truck traveling 41 MPH at impact and that the vehicles rotated and ended up in their resting positions as shown in the accident photos.

¶14 From these observations, Daly determined that Bowers sustained a level 3.5 closed head injury on the Abbreviated Injury Scale (AIS), which corresponds to moderate permanent neurological consequences. Daly further calculated the severity of Bowers's injuries had Marzano been traveling at lesser speeds: AIS 1.6 (minor concussion with no permanent effects) at 35 MPH; AIS 0.3 (very slight dizziness) at 30 MPH; AIS <0 (no symptoms) at 25 MPH or lower. The trial court did not appear to consider Daly's evidence when it granted summary judgment or denied the motion for reconsideration. Bowers appeals.

## ANALYSIS

¶15 We begin our analysis inquiring whether Bowers validly established Marzano's point of notice. We then analyze Bowers's claims for enhanced injuries.

## I. Point of Notice

¶16 Bowers argues that the trial court erred in granting summary judgment because his evidence established a point of notice and, but for her negligence, Marzano could have taken reasonable steps to avoid the accident. Because we find Bowers has established that a genuine issue of material fact exists about point of notice, we reverse and remand for trial.

### A. Summary Judgment Standard of Review

¶17 We review an order granting summary judgment de novo. *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 302, 178 P.3d 995 (2008). Under CR 56(c), summary judgment is appropriate if the record presents no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 243, 178 P.3d 981, *cert. dismissed*, 554 U.S. 941 (2008). We must view all facts, and draw reasonable inferences from them, in the light most favorable to the nonmoving party. *Viking Props., Inc. v. Holm*, 155 Wn.2d 112, 119, 118 P.3d 322 (2005).

¶18 An affidavit expressing an expert's opinion may be sufficient to create a genuine issue of fact and thus preclude summary judgment. *See Coggle v. Snow*, 56 Wn. App. 499, 511, 784 P.2d 554 (1990). But in order to preclude summary judgment, the expert's affidavit must amount to more than mere speculation or conclusory statements. *See Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689, *review denied*, 122 Wn.2d 1010 (1993).

### B. Negligence Standards of Review

¶19 In order to prove negligence, a plaintiff must show (1) existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Degel v. Majestic*

*Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). The existence of a duty is a question of law, while breach and proximate cause are generally questions of fact for a jury; though, a court may determine breach and proximate cause as a matter of law where reasonable minds could not differ about them. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

¶20 The driver with a right-of-way is the favored driver, while the disfavored driver must yield the right-of-way. *See Hough v. Ballard*, 108 Wn. App. 272, 281, 31 P.3d 6 (2001). The disfavored driver bears the primary duty to avoid a motor vehicle accident. *Sanchez v. Haddix*, 95 Wn.2d 593, 597, 627 P.2d 1312 (1981). A favored driver may assume that a disfavored driver will yield the right-of-way; and, this assumption continues until the favored driver becomes aware, or in the exercise of reasonable care should have become aware, that the disfavored driver will not yield the right-of-way. *Bohnsack v. Kirkham*, 72 Wn.2d 183, 192, 432 P.2d 554 (1967). The point where a favored driver realizes a disfavored driver will not yield the right-of-way is the point of notice. *Holmes v. Wallace*, 84 Wn. App. 156, 161-62, 926 P.2d 339 (1996). From the point of notice, the favored driver enjoys a reasonable reaction time to avoid a collision. *Grobe v. Valley Garbage Serv., Inc.*, 87 Wn.2d 217, 226-27, 551 P.2d 748 (1976).

¶21 Split-second computations of time, alone, lack sufficiency to prove the favored driver's negligence. *See Theonnes v. Hazen*, 37 Wn. App. 644, 646, 681 P.2d 1284 (1984). But situations arise when a favored driver exercising ordinary care should become aware that a disfavored driver will not yield the right-of-way before reaching an intersection. A jury must determine whether, from this point of notice, a reasonable favored driver would still have time to maneuver to avoid the accident. *See Grobe*, 87 Wn.2d at 227. To show proximate cause, a plaintiff must produce evidence from which the trier of fact can infer the favored driver's approximate point of notice. *Channel v. Mills*, 77 Wn. App. 268, 279, 890 P.2d 535 (1995).

¶22 From that point of notice, the fact finder compares the favored driver's actual conduct to the hypothetical conduct of a reasonable person in the same situation to determine whether sufficient evidence demonstrates that the accident would not have happened but for the favored driver's negligence. *Whitchurch v. McBride*, 63 Wn. App. 272, 276, 818 P.2d 622 (1991), *review denied*, 118 Wn.2d 1029 (1992). When a plaintiff cannot establish a point of notice, it fails to bear its burden to show proximate cause; then as a result, the jury has no way to determine what a reasonable person's actions would have been in the favored driver's situation. *Whitchurch*, 63 Wn. App. at 276-77. Therefore, failure to establish the favored driver's point of notice gives rise to summary judgment. *See Whitchurch*, 63 Wn. App. at 277.

## C. Marzano's Point of Notice

¶23 The trial court granted Marzano summary judgment because it found that Bowers failed to establish Marzano's point of notice—the point at which she realized Walter was not going to yield the right-of-way. Specifically, the trial court elaborated on its summary judgment ruling after it heard Bowers's motion for reconsideration: "I am still of the same mind as I was before. I think this is in the realm of speculation, that [the point of notice] is not sufficiently established to justify going to trial on this issue." VRP (May 28, 2010) at 64-65. The trial court erred.

¶24 In *Theonnes*, Division One of this court upheld a trial court's grant of summary judgment in favor of the defendant in a personal injury action brought by the mother of a boy Hazen's car struck after the boy rode his bicycle into the street. *Theonnes*, 37 Wn. App. at 645. Theonnes submitted affidavits from a traffic accident reconstruction expert who calculated that Hazen drove at 42 MPH in a 35 MPH zone and was 59 feet from the child when she first saw him. *Theonnes*, 37 Wn. App. at 645. The expert also con-

cluded that Hazen could have avoided the accident had she been traveling straight ahead at 30 MPH; or, had she taken evasive action away from the boy, she could have avoided the accident even while driving at a higher speed. *Theonnes*, 37 Wn. App. at 645. Finally, the expert stated that the ability of a vehicle to cause damage increases exponentially with speed and concluded that the excessive speed did far more damage than a speed of 10 or even 5 miles per hour less. *Theonnes*, 37 Wn. App. at 645. The trial court granted the defendant's motion for summary judgment because despite this evidence, the plaintiff failed to demonstrate that the defendant's 42 MPH speed proximately caused the accident. *Theonnes*, 37 Wn. App. at 647. The trial court reasoned that even had the defendant been driving the speed limit, she would not have been able to avoid the collision because she saw the boy when she was just 59 feet from him. *Theonnes*, 37 Wn. App. at 647. Division One affirmed on appeal, holding that Hazen would have collided with the boy even had she been driving the speed limit. *Theonnes*, 37 Wn. App. at 648. The court determined that the expert's opinion—that the driver could have avoided the accident while driving straight ahead at 30 MPH or by taking evasive action at a higher speed to avoid the collision—drew conclusions based on assumptions, not evidence; but, the court noted that the expert's conclusions were "not based on evidence as was the case with the speed and distance calculations from skid marks and coefficient of friction." *Theonnes*, 37 Wn. App. at 649. Bowers's facts differ.

¶25 Unlike the plaintiff's blind assertions in *Theonnes*—that driving straight at 30 MPH or taking evasive action would have allowed the defendant to avoid a collision—Becinski derived his calculations from facts and evidence of speed and distance, based on skid mark measurements, vehicle characteristics, vehicle resting positions, surface conditions, and coefficient of friction. Bowers sufficiently established Marzano's point of notice at 2.53 seconds before she arrived at the intersection—the distance

from which the trier of fact could infer Marzano's point of notice and determine whether her negligence proximately caused the collision. *See Channel*, 77 Wn. App. at 279.

¶26 First, Becinski used facts to determine that the Subaru traveled through the intersection no faster than 15 MPH.[7] Dawn Edwards, the Subaru's owner, declared in an affidavit that her Subaru could not exceed 22 MPH in first gear; and, following the accident, sheriff's deputies found the Subaru in first gear. Johnson declared in an affidavit that 10 feet from the stop sign, the Subaru traveled slower than 10 miles per hour. Becinski used the SLAM accident reconstruction program, relying on accident scene measurements taken by the Pierce County Sheriff's Department. The SLAM program results were consistent with the Subaru traveling at 15 MPH.[8] And while Becinski did not factor this into his analysis, Marzano conceded that the Subaru traveled at 10 to 15 MPH through the intersection.

¶27 Second, having determined that the Subaru reached 15 MPH at the point of impact, Becinski noted that it would have taken the Subaru 2.53 seconds to travel from the point where the car first crosses the stop sign to the point of impact. Based on the same calculation, it would have taken 2.00 seconds from the point that the Subaru was halfway through the stop sign to reach the point of impact.

¶28 Third, the CDR system from Marzano's truck indicated that the truck was traveling at constant rate of 1280 RPMs at the time of impact.[9] Based on Pierce County Sheriff's Department's data, Becinski's measurements, and

---

[7] Following the grant of summary judgment, but before the motion for reconsideration, Bowers deposed Walter. Walter confirmed that he drove the car through the intersection at 10 MPH and sped up to 15 MPH at the point of impact.

[8] Becinski used a conservative number (15 MPH) even though Johnson had declared that the Subaru was traveling slower than this.

[9] The CDR system measured the truck's RPMs the final five seconds of travel prior to impact, at one second intervals.

the SLAM program calculations, Becinski calculated that before impact, Marzano maintained at least 41 MPH.[10]

¶29 Fourth, Marzano stated that she witnessed the Subaru cross through the stop sign. Thus, if Marzano witnessed the Subaru pass through the stop sign, her physical point of notice that Bowers would fail to yield the right-of-way would have been at least 152.13 feet before she reached the point of impact.[11] Then, because the intersection caution sign would have put an attentive driver on alert for crossing traffic, Becinski calculated that it should have taken Marzano 0.67 seconds to begin braking after seeing the Subaru cross through the stop sign. Thus, Bowers opines that Marzano had 1.86 seconds and 111.8 feet to brake and avoid the collision;[12] accordingly, Bowers provided sufficient evidence of Marzano's point of notice and should have an opportunity for a jury to determine whether a reasonably prudent driver's hypothetical conduct under the same circumstances would have avoided the accident. *See Whitchurch*, 63 Wn. App. at 276-77.

¶30 The *Theonnes* court determined that 59 feet provided Hazen too little reaction time to avoid a collision with the boy even if she had been driving at the 35 MPH speed limit. *Theonnes*, 37 Wn. App. at 648. Here, Marzano had nearly 100 feet more (152.13 total feet) than Hazen to react at the same 35 MPH speed limit, which makes far more likely

---

[10] Hunter asserted that the CDR system's 1280 RPM reading demonstrated the vehicle to be traveling 39-40 MPH at impact. Becinski declined to make a miles-per-hour reading based on the RPM data because he could not endorse that data without additional evidence (vehicle gear ratio and tire/wheel size at time of calibration and at time of the accident).

[11] This calculation is based on Marzano traveling at 41 MPH (60.133 feet per second) for 2.53 seconds. This calculation further assumes that Marzano did not speed up at any point after seeing the Subaru cross through the stop sign.

[12] Becinski also calculated that had Marzano slowed to 30 MPH (44 feet per second) as she approached the intersection (in heeding the intersection caution sign), she would have noticed the hazard 111.32 feet (44 feet per second x 2.53 seconds) away from the intersection. She would have taken 0.67 seconds to react, leaving 1.86 seconds, or 81.84 feet, to brake (44 feet per second x 1.86) and avoid the collision.

the argument that reasonable minds may differ whether a reasonable driver in Marzano's place could have avoided the collision.[13]

¶31 Because Becinski's expert opinion amounts to more than mere speculation or conclusory statements in its establishment of Marzano's point of notice, the thesis in his affidavit sufficiently creates a genuine issue of fact and precludes summary judgment. *See Guile*, 70 Wn. App. at 25; *see Coggle*, 56 Wn. App. at 511. The trial court should have allowed a jury to decide whether Marzano should have become aware, before she reached the intersection and when there was still time to avoid the accident, that the Subaru would not yield the right-of-way. *See Grobe*, 87 Wn.2d at 226-27. The trial court erred in granting Marzano's motion for summary judgment and subsequently denying Bowers's motion for reconsideration.

## II. Enhanced Injuries

¶32 Bowers next argues that because Marzano was speeding, her excessive speed enhanced his injuries by a quantifiable amount. Specifically, Bowers claims Washington authority does not hold that determining proximate cause is a prerequisite to argue enhanced injuries from excessive speed. Bowers seeks an opportunity to argue his enhanced injury claim to a jury, regardless of whether he can first establish Marzano's point of notice. The trial court dismissed Bowers's enhanced injury argument on summary judgment and then denied his motion for reconsideration

---

[13] Marzano claims that Walter's California stop misled her into thinking he would yield to her the right-of-way because "[n]udging" just past a stop sign does not constitute notice to a favored driver that a disfavored driver will not yield the right-of-way. CP at 349. She further asserts that she still expected him to yield the right-of-way and that Walter never provided unmistakable notice that he would fail to yield the right-of-way until he entered her lane of travel. This observation differs significantly from Marzano's earlier description, in which she claimed Walter "blew through" the stop sign, implying that Walter's failure to yield was relatively obvious. CP at 284. This question of fact seems appropriate for a jury. Here we view the facts in the light most favorable to Bowers, the nonmoving party.

seemingly because Bowers never established Marzano's point of notice. Bowers's thesis appears incorrect under *Grobe*.

¶33 In *Grobe*, Valley Garbage Service (VGS) appealed a jury trial judgment in a comparative negligence case for Grobe's personal injuries resulting from an automobile-truck collision in which Grobe was the favored driver. *Grobe*, 87 Wn.2d at 218-19. Grobe's car and a VGS truck collided on a snowy day at an uncontrolled intersection. *Grobe*, 87 Wn.2d at 219. Both drivers were driving below the posted speed limit, but VGS asserted that because of snowy conditions, Grobe still drove at an unreasonably excessive speed. *Grobe*, 87 Wn.2d at 219. VGS offered evidence showing that Grobe failed to drive with proper attentiveness; but, the court held this evidence could not support VGS's argument that Grobe drove at an excessive speed for the conditions. *Grobe*, 87 Wn.2d at 221. The court held that the physical conditions at the time of the accident (e.g., weather, surface conditions) do not give rise to an inference of excessive speed; rather, a party must offer substantial evidence, perhaps through an expert, of what would have been a reasonable speed under the prevailing conditions in order to create an inference of excessive speed. *Grobe*, 87 Wn.2d at 222.

¶34 VGS also asserted that the plaintiff's excessive speed led to her own enhanced injuries. *Grobe*, 87 Wn.2d at 226. The Supreme Court disagreed with this logic for three reasons:

> First, if excessive speed was not a proximate cause of the accident, the comparative negligence rule has no application in apportioning liability between the parties on that basis. Second, there was no testimony to show to what extent plaintiff's injuries might have been lessened had she been going slower. The proposed instruction would therefore only invite speculation, guessing, and conjecture by the jury on this question. Third, the instruction as framed did not present the issue of enhanced damages.

*Grobe*, 87 Wn.2d at 226 (citations omitted). *Grobe*, then, appears to hold that a party claiming enhanced injuries resulting from excessive speeds must first demonstrate that those excessive speeds proximately caused the accident.

¶35 So, even though Bowers has expert testimony regarding his enhanced injuries, he must first prove that Marzano's speed proximately caused the accident in order to argue enhanced injuries. *See Grobe*, 87 Wn.2d at 226. In granting summary judgment, however, the trial court erred when it determined that Bowers failed to establish Marzano's point of notice. Thus, the trial court improperly precluded Bowers from arguing proximate cause and, thus, enhanced damages. Accordingly, because Bowers's evidence arguably establishes Marzano's point of notice, under *Grobe*, Bowers should have an opportunity to demonstrate to a jury that Marzano's excessive speed or negligence proximately caused the accident and that her excessive speed contributed to his enhanced injuries.

¶36 We reverse the trial court's grant of summary judgment and remand for trial.

WORSWICK, C.J., and VAN DEREN, J., concur.