# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHRISTIAN DOSCHER, | No. 602211-II |
| Appellant, | |
| v. | |
| FRED JOHNS, RICHARD LAWRENCE, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, J. – Christian Doscher appeals the trial court's grant of summary judgment in favor of Richard Lawrence on Doscher's claims for negligence, "intentional tort," civil conspiracy, and harassment.

The lawsuit arose out of confrontation between Doscher and Lawrence. After a verbal exchange, Lawrence got into his truck to drive away. Doscher stood behind the truck while recording the scene on his phone. Lawrence backed up the truck a short distance and then stopped. Doscher claims that the truck hit him and hurt his fingers. Lawrence denies that the truck hit Doscher and alleges that Doscher hit the truck after it was completely stopped.

Doscher also alleges that after the incident, Lawrence and his friend conspired to tell the police a false story. And he alleges that the previous summer, Lawrence and his friend conspired to harass him.

We hold that (1) viewing the evidence in the light most favorable to Doscher, the trial court erred in granting summary judgment in favor of Lawrence because there is a genuine issue of material fact regarding whether Lawrence was negligent in backing up his truck; (2) the trial court did not err in granting summary judgment in favor of Lawrence on all other claims; and (3) Doscher is not entitled to summary judgment on his negligence claim.

Accordingly, we reverse in part, affirm in part, and remand for further proceedings on Doscher's negligence claim.

## FACTS

*Background*

Doscher and Fred Johns used to be neighbors in a duplex in Tumwater. Lawrence is a friend of Johns.

In March 2022, Doscher saw Johns and Lawrence outside of Johns's residence and confronted them because he believed they previously had harassed him. Doscher recorded a video of this confrontation. Lawrence then got into his truck to leave. As Lawrence got into his truck, Doscher was standing on the side of the road. He then moved behind the truck. The truck started to slowly back up and then stopped when Doscher began yelling.

When the truck stopped, Doscher yelled that he was making a citizen's arrest. Lawrence got out of his truck and said he would wait for the police to arrive. Police officers arrived and took statements from Lawrence and Johns.

*Procedural History*

Following the incident, Doscher filed a lawsuit against Lawrence and Johns. Relating to the alleged truck collision, Doscher alleged that the truck lurched backward and hit him. Doscher asserted claims against Lawrence for negligence (count one), "intentional tort" (count two), and a conspiracy to make false statements to the police (count three). In addition, regarding the earlier incident unrelated to the truck collision, Doscher alleged a civil conspiracy in violation of RCW 9A.46.020(1)(a)(iv) (count four), and an intentional tort claim premised on a violation of a harassment statute (count five).[1]

Subsequently, both parties filed summary judgment motions. Doscher submitted virtually identical declarations in support of his summary judgment motion and in opposition to Lawrence's motion. He described his version of the events and attached the video of the incident, an audio recording, and an unsigned copy of a document regarding a fourth degree assault charge regarding Lawrence that Doscher received from the Thurston County Prosecuting Attorney's Office.

According to Doscher's version of events, in June 2021, he saw Johns and Lawrence standing on Johns's front porch and overheard Johns say, "you should tell [Doscher] you will evict him, he's way behind in his rent" and Lawrence responding, "I'm the new owner, is that what you're asking?" Clerk's Papers (CP) at 287. After this discussion, Lawrence approached Doscher pretending to be the duplex's new landlord and said that Doscher was behind on his rent and was being evicted.

Regarding the March 2022 alleged accident, Doscher stated as follows:

---

[1] Johns did not respond to the allegations, and the trial court entered a default judgment against him.

6. When Lawrence began to enter the truck, I began to stand directly behind the truck, to the left side to ensure that Lawrence, the only driver, naturally sitting on the left side of the truck, could see me in his left-side rearview mirror. Exhibit A, video, time-code 00:50 ff. I did not move from this position until the truck impacted me.

7. Lawrence has previously declared in Court that I had moved myself behind the truck *after the truck started moving.* As the video makes clear (Id), I was standing still at all times from just before Lawrence started the engine, to after he lurched the truck backward, and I only moved because the truck pushed me back.
. . . .

9. Lawrence entered the truck, started the engine, placed it in reverse gear, then, *while looking at me standing still through the rear-view mirror,* gunned the engine, causing the truck to lurch backward and hit me.
. . . .

13. During the truck's lurching backward, I feared that Lawrence would actually run me over, because he had been looking at me through his rearview mirror before and during this backward lurching. I could tell immediately that Lawrence did not make any mistake of perception. I moved my arms forward instinctively in reaction to this assault.

14. The collision hit mostly my hands, causing two fingers go numb for a few minutes. During that time I could not bend my fingers or use them to pick up objects.

15. I visually confirmed that both Johns and Lawrence were watching me as the truck's backing was in progress.

CP at 284-85 (emphasis in original).

Doscher said that after the collision, he heard Johns tell Lawrence to "just tell the police he ran himself into the back of your truck while it was parked." CP at 286. Doscher said that when the police arrived, Lawrence and Johns separately said that Doscher had run into the back of the truck while it was parked.

4

The video showed Doscher filming Lawrence as he got into the truck. Doscher said that Lawrence was "starting to leave right now, so I'm standing behind his truck." Video at 0:44-0:49. Doscher appeared to stand behind the truck's left brake light. The truck's brake lights came on and then the reverse lights came on. The truck started to slowly back up and a second later Doscher yelled "Hey, look out! Hey, look out! Stop, stop, stop, stop!" Video at 0:50-0:59. The truck then stopped.

The document from the prosecutor's office was a "Recommendation on Plea of Guilty" regarding a fourth degree assault charge against Lawrence. CP at 294. The document was not signed or accompanied by a certification of its authenticity.

In support of his summary judgment motion, Lawrence submitted a declaration describing his version of events and attached transcripts from the depositions of him and Johns. Lawrence stipulated to the video Doscher took of the incident and incorporated it into his materials by reference to Doscher's motion.

Regarding the alleged June 2021 harassment incident, Lawrence said that he had no recollection of the incident and that he had never met Doscher before March 2022. In his deposition, Lawrence denied telling Doscher that he was behind on his rent and that he was being evicted.

Regarding the March 2022 alleged accident, Lawrence stated as follows:

3. When Doscher became combative, as seen in the video, I decided to leave to avoid any sort of fight. As I was getting in my truck, Doscher was quite a way behind my truck and off to the left side, still recording me. I started my car and shifted into reverse. My truck has a rear camera, so as I was backing up, I looked in my side mirror and rear camera. I did not see Doscher in either my mirror nor in my camera view.

4. While I was backing up, I heard someone yell and I stopped my car but was still

in reverse gear. *After* I had completely stopped the car, someone hit the back of the truck. Based off the video and what I was told after the fact, it appeared that Doscher had moved his camera away from my truck so that the video would not show that I had stopped, yelled, and then slapped the back of my truck with his hand.

CP at 180-81. In his deposition, Lawrence stated that he did not hit Doscher and that Doscher threw himself behind the truck on purpose.

Johns said in his deposition that the truck only contacted Doscher because Doscher "put [his] hand on the truck when it came to a stop." CP at 248.

In his summary judgment motion, Lawrence acknowledged that a driver has a duty to exercise due care to prevent any sort of collision. But he argued that this duty of care did not require him to anticipate a person jumping behind his vehicle, and that Doscher's negligent act of standing behind the truck as he was backing up was the sole cause of the accident. Lawrence asserted that he "was under no obligation to assume that, rather than stepping out of the way of a slowly moving car, Doscher would instead continue to stand in the road directly behind Defendant's vehicle." CP at 354.

Regarding the intentional tort claims, Lawrence argued that the claims failed as a matter of law because it was unclear what claim Doscher was asserting, and that he did not raise an issue of material fact relating to either negligent or intentional infliction of emotional distress. Doscher stated that he was not asserting an intentional or negligent infliction of emotional distress claim. He did not identify a specific intentional tort that he was asserting, but did suggest that Lawrence committed an intentional tort by violating the criminal fourth degree assault statute.

The trial court granted summary judgment in favor of Lawrence on all of Doscher's claims. The court did not expressly address Doscher's summary judgment motion. Doscher appeals the trial court's summary judgment order.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review a trial court's summary judgment order de novo.  *Stanley v. Sierra Pac. Land & Timber*, 34 Wn. App. 2d 762, 770, 567 P.3d 1161 (2025).  Summary judgment is appropriate under CR 56(c) if the evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022).  A genuine issue of material fact exists where reasonable minds could differ on the outcome of a factual issue.  *Id.*  If the moving defendant shows that the evidence does not support the plaintiff's claim, the burden shifts to the plaintiff to identify specific facts that show a genuine issue of material fact.  *Id*. at 231-32.

We view all the evidence and apply reasonable inferences in the light most favorable to the nonmoving party.  *Stanley*, 34 Wn. App. 2d at 770.  We must assume that a nonmoving party's declaration is true even if it is self-serving.  *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 575, 459 P.3d 371 (2020).  However, a party cannot defeat a motion for summary judgment by relying on " 'speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.' " *Martin v. Gonzaga University*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.,* 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

B.    NEGLIGENCE CLAIM

Doscher argues that the trial court erred in granting summary judgment in favor of Lawrence because his declaration testimony and the video raise a genuine issue of material fact regarding Lawrence's negligence.  We agree.

1. Legal Principles

To prevail on a negligence claim, a plaintiff must show that (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) he was injured as a result of the breach, and (4) that the defendant's breach was the proximate cause of his injury. *Stanley*, 34 Wn. App. 2d at 770. If the plaintiff fails to make a showing on any of these elements, summary judgment is appropriate. *Id* at 771.

RCW 46.61.245(1) provides that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary." Drivers are "always bound to exercise due care to avoid colliding with pedestrians." *Xiao Ping Chen v. City of Seattle*, 153 Wn. App. 890, 907, 223 P.3d 1230 (2009). In addition, RCW 46.61.605(1) states, "[t]he driver of a vehicle shall not back the same unless such movement can be made with safety."

Drivers may assume other people will abide by the rules of the road. *Stanley*, 34 Wn. App. 2d at 771. But this assumption continues only "until the favored driver becomes aware, or in the exercise of reasonable care should have become aware, that the disfavored [entity] will not yield the right-of-way." *Bowers v. Marzano*, 170 Wn. App. 498, 506, 290 P.3d 134 (2012). Once a reasonable person would realize the disfavored entity will not yield the right of way, the favored driver has a reasonable reaction time to avoid a collision. *Id*.

The driver of a vehicle generally is charged with seeing what is available to be seen. *See Day v. Goodwin*, 3 Wn. App. 940, 944, 478 P.2d 774 (1970) (approving jury instruction).

Washington follows the comparative negligence model. RCW 4.22.005; *Stanley*, 34 Wn. App. 2d at 771. Under this system, a plaintiff asserting a negligence claim still may recover even if they are partially at fault for their injury. RCW 4.22.005. Instead, the amount a plaintiff may

recover is reduced in proportion to the amount they are personally at fault for their own injury. RCW 4.22.005.

    2.    Analysis

Doscher stated in his declaration that (1) he was standing behind Lawrence's truck on the left side so the driver could see him in the sideview mirror; (2) Lawrence was looking at him through the rearview mirror before and during his backing up; (3) he visually confirmed that Lawrence could see him as the truck backed up; and (4) the truck hit him. On summary judgment, we must assume that these statements are true. *Mackey*, 12 Wn. App. 2d at 575. Doscher's declaration testimony is sufficient to create a question of fact as to whether Lawrence breached his duties under RCW 46.61.245(1) and RCW 46.61.605(1).

Lawrence stated in his declaration that he did not see Doscher behind his truck when he backed up. But in light of Doscher's statements, Lawrence's declaration merely creates a genuine issue of material fact regarding Lawrence's statutory duties.

Lawrence appears to argue that he was not at fault because he had the right of way and therefore he had no obligation to stop or slow down even if he saw Doscher behind his truck. But a plaintiff's status as a disfavored entity does not relieve a defendant completely from their duty to exercise reasonable care. *E.g.*, RCW 46.61.245(1); *Stanley*, 34 Wn. App. 2d at 772 (discussing that a driver with favored status still has duty to avoid collisions). Lawrence also argues that the accident was caused by Doscher's negligence in standing behind his truck. But a plaintiff's negligence does not preclude the possibility that the defendant also was negligent. *See* RCW 4.22.005.

We acknowledge that Lawrence denies that his truck hit Doscher. But treating Doscher's testimony as true, as we must in reviewing a grant of summary judgment, we conclude there is a

genuine issue of material fact as to each element of negligence. Therefore, we hold that the trial court erred in granting summary judgment in favor of Lawrence on Doscher's negligence claim.

C.    "INTENTIONAL TORT" CLAIM

Doscher argues that the trial court erred in granting summary judgment in favor of Lawrence on his "intentional tort" claim (count two) because there is a genuine dispute of fact regarding whether Lawrence committed an intentional tort against him. Lawrence argues that the trial court's grant of summary judgment should be affirmed because the complaint was inadequate to plead a viable claim. We agree with Lawrence.

1.    Legal Principles

CR 8(a) requires a complaint to contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." This rule allows for notice pleading. *Reagan v. Newton*, 7 Wn. App. 2d 781, 801, 436 P.3d 411 (2019). "However, the complaint still must adequately inform the defendant of the nature of the plaintiff's claims *as well as the legal grounds upon which those claims rest*." *Id.* (emphasis added). As a result, "notice pleading under CR 8 does not allow a plaintiff to allege only the factual basis in its pleading, *leaving the plaintiff unrestricted as to any particular legal theory*." *Id.* (emphasis added).

Self-represented litigants are held to the same standard as represented parties. *Winter v. Dep't of Soc. & Health Servs.*, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020).

2.    Complaint Analysis

Here, count two of Doscher's complaint  is titled "Intentional Tort." In a preamble to this count, the complaint quotes *Cagle v. Burns and Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434

10

(1986), for the proposition that emotional distress damages are recoverable upon proof of an intentional tort. The complaint then alleges,

> 25. While watching Plaintiff stand behind the truck, Lawrence entered the truck, started it, placed it in reverse gear, then, while looking at Plaintiff through the rear-view mirror, gunned the engine causing the truck to lurch backward and hit Plaintiff. The zone of danger doctrine still holds relevance, however. Under the zone of danger standard, the plaintiff need not prove objective symptoms to recover emotional distress damages. Hester v. National, Case No. C20-6202BHS (WD Washington July 14, 2021 quoting Wilson v. Key Tronic Corp., 40 Wash. App. 802, 809-10, 701 P.2d 518 (1985).

> 26. *Damages* – Plaintiff experienced fear for his safety and was injured in two of his fingers, which went numb for a few minutes. Plaintiff had nightmares about the incident about twice per week for the next two months.

CP at 9-10.

There is no cause of action in Washington called an "intentional tort." And the complaint fails to identify a specific intentional tort. In addition, the cases to which Doscher cited in his complaint are not helpful to discern what tort was being alleged because they discuss torts that Doscher clearly was not alleging or says he was not alleging. *Cagle*, 106 Wn.2d at 912 (discussing unlawful termination in violation of public policy); *Hester*, No. C20-6202BHS, 2021 WL 2949781, at *1 (discussing negligent infliction of emotional distress).

Doscher's complaint is an example of this court's admonition in *Reagan* that a plaintiff cannot allege "only the factual basis in its pleading, leaving the plaintiff unrestricted as to any particular legal theory." 7 Wn. App. 2d at 801. The inadequate complaint caused Lawrence to address intentional infliction of emotional distress, which Doscher emphasized that he was not claiming. The allegations in the complaint could support claims for assault and battery. But Doscher did not assert those claims and he did not amend his complaint when it became clear that the claim he was asserting was uncertain.

11

Therefore, we hold that the trial court did not err by granting summary judgment in favor of Lawrence on Doscher's claim for an "intentional tort" in count two.

D.     CIVIL CONSPIRACY CLAIMS

Doscher argues that the trial court erred in granting summary judgment in favor of Lawrence on his civil conspiracy claims (counts three and four). We disagree.

1.    Legal Principles

When asserting a claim for civil conspiracy, a plaintiff must establish " 'by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.' " *Puget Sound Sec. Patrol, Inc. v. Bates*, 197 Wn. App. 461, 470, 389 P.3d 709 (2017) (quoting *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000)). But a civil conspiracy claim fails if the underlying act or claim is not actionable. *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 439, 438 P.2d 867 (1968); *see also Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020) ("Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently – its viability hinges on the existence of a cognizable and separate underlying claim.").

2.    Analysis

First, Doscher argues that Lawrence conspired with Johns to make false or misleading statements to a public servant after the alleged accident, in violation of RCW 9A.76.175 (count three). However, Doscher does not identify any authority stating that a person has an express or implied civil cause of action for another person's violation of RCW 9A.76.175. Because there is no viable underlying claim, Doscher's conspiracy claim fails. *See W.G. Platts,* 73 Wn.2d at 439.

Second, Doscher argues that Lawrence conspired with Johns to commit civil harassment against him the previous summer, in violation of RCW 9A.46.020(1)(a)(iv) or RCW 7.105.010 (count four). Doscher relies on the civil harassment statute, chapter 7.105 RCW. However, the relief allowed under chapter 7.105 RCW is a protection order against unlawful harassment. RCW 7.105.225(1)(f). There is no indication in the statute that a petitioner can obtain any other relief. *See Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011) ("Washington does not recognize a cause of action for damages for civil harassment." ).

Doscher appears to argue that under *Cagle*, 106 Wn.2d at 911, he is entitled to recover emotional distress damages for intentional actions that are against public policy. But the court in that case held that emotional distress damages are "recoverable for *wrongful termination of employment* in violation of public policy." *Cagle*, 106 Wn.2d at 919 (emphasis added). The court did not hold that there is a general civil cause of action for any intentional actions that are in violation of public policy.

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Lawrence on Doscher's conspiracy claims in counts three and four.

E.     HARASSMENT CLAIM

Doscher argues that the trial court erred in granting summary judgment in favor of Lawrence on his separate harassment claim (count five). We disagree.

Doscher alleges in his complaint that Lawrence committed the intentional tort of unlawful harassment. However, he again relies only on chapter 7.105 RCW. As stated above, there is no cause of action for damages for civil harassment under chapter 7.105 RCW. *See* RCW 7.105.225(1)(f); *Phillips*, 822 F. Supp. 2d at 1121. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Lawrence on Doscher's harassment claim.

F.        DOSCHER'S SUMMARY JUDGMENT MOTION

Doscher argues that the trial court erred in denying his motion for summary judgment. But just as Doscher's declaration created a question of fact on his negligence claim, so does Lawrence's declaration and deposition create a question of fact regarding that claim. At the very least, there is contrary evidence as to whether the truck even hit Doscher. And we hold above that the trial court properly granted summary judgment in favor of Lawrence on Doscher's other claims. Therefore, we reject Doscher's argument.

## CONCLUSION

We reverse in part, affirm in part, and remand for further proceedings on Doscher's negligence claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

CHE, J.