# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GAYLE TORGERSON, )  No. 69421-9-I
)
    Appellant, )  DIVISION ONE
)
  v. )
)
THE CITY OF SEATTLE, )
)  ORDER AMENDING OPINION
    Respondent, )
)
AMELIA HARTMAN and JOHN DOE )
HARTMAN, wife and husband, and their )
marital community, )
)
    Defendants. )

The Respondent City of Seattle filed a motion to correct footnote 7 of the opinion

filed on March 31, 2014. A majority of the panel having determined that the motion

should be granted and the opinion amended to delete footnote 7 on page 12, now,

therefore, it is hereby

ORDERED that the opinion of this court in the above-entitled case filed March

31, 2014 be amended as follows:

> Footnote 7 on page 12 shall be deleted. All subsequent footnotes
> shall be renumbered accordingly.

The remainder of this opinion shall remain the same.

Dated this 21st day of April, 2014.

Cox, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GAYLE TORGERSON, | ) | No. 69421-9-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF SEATTLE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent, | ) | |
| | ) | |
| AMELIA HARTMAN and JOHN DOE | ) | |
| HARTMAN, wife and husband, and their | ) | |
| marital community, | ) | |
| | ) | |
| Defendants. | ) | FILED: March 31, 2014 |

SCHINDLER, J. — Gayle Torgerson was hit by a car traveling 30 m.p.h. while she was walking across a busy intersection in a marked crosswalk in a designated school zone. Torgerson appeals summary judgment dismissal of her negligence claims against the city of Seattle. We reverse and remand for trial.

## FACTS

California Avenue Southwest is an arterial that runs north/south through West Seattle. The marked crosswalk at the intersection of California Avenue Southwest and Southwest Dakota Street is located "just one block north of the busy West Seattle Junction commercial district." The crosswalk is marked with broad white stripes and

crosses three lanes of traffic: a northbound lane, a center turn lane, and a southbound lane. The crosswalk is approximately 60 feet long running diagonally from the southwest corner of the intersection to the southeast corner of the intersection. The crosswalk is approximately 10 feet longer than other crossings along California Avenue Southwest. There is a bus stop located on the northeast and the southwest corner of the intersection.

In 2007, the city of Seattle (City) designated as a school zone "every street that borders an accredited school with K-12 and more than 20 students," and required installation of reduced speed school zone signs on streets bordering school property and at "uncontrolled marked crosswalks on arterial and non-arterial streets within 300[ feet] of school property."

The crosswalk at the intersection of California Avenue Southwest and Southwest Dakota Street is designated as a school crosswalk located in a school zone. The Tilden School, a small private school, is located within 100 feet of the intersection. Three other schools serving more than 1,000 children are located within one to two blocks of the intersection. The schools open between 7:30 a.m. and 9:00 a.m. with before-school activities beginning as early as 7:00 a.m.

In January 2010, there were yellow pentagon-shaped school crossing signs on the southeast corner of the intersection. The school crossing signs depict an adult and child walking. There were also pole-mounted buckets containing florescent yellow "crossing flags" for pedestrians to use at either end of the crosswalk. The City had installed a 20 m.p.h. school speed limit sign that faced drivers on Southwest Dakota Street, but had not installed a reduced 20 m.p.h. school speed limit sign facing drivers

on California Avenue Southwest.[1] The posted speed limit on California Avenue Southwest was 30 m.p.h.

Gayle Torgerson typically used the marked school crosswalk twice a day during the work week to get to the bus stop on the west side of California Avenue Southwest. At 7:43 a.m. on January 12, 2010, Torgerson waited for a safe time to cross California Avenue Southwest before walking across the intersection in the marked crosswalk. Meanwhile, 82-year-old Amelia Hartman was driving approximately 30 m.p.h. southbound on California Avenue Southwest. Hartman's car struck Torgerson as Torgerson was more than halfway across the intersection. Torgerson hit the windshield of the car and was thrown approximately 70 feet south of the intersection. Police and emergency personnel arrived and transported Torgerson to Harborview Medical Center. Torgerson suffered multiple broken bones and a head injury.

Hartman provided a written statement to police. Hartman said she was driving around the posted 30 m.p.h. speed limit when she suddenly noticed Torgerson and tried to brake, "[b]ut it was too late." Hartman states, in pertinent part:

> I was going to the Holy Rosary Church from home. It was busy at that time. I was driving southbound on California, approaching SW Dakota. . . . All of a sudden [Torgerson] was there in front of me . . . on my windshield. . . . She was right in my path as I was coming south. I thought I saw a figure and I tried to set my foot on my brake. But it was too late. It happened so fast.

In her deposition, Hartman testified that Torgerson "was just barely out of my path. . . . She was already past my pathway, and I saw this leg." Hartman testified that when she saw Torgerson's leg, her car was "in the crosswalk." Hartman knew the marked crosswalk was in a school zone.

---

[1] The City does not dispute that the crosswalk is a school crosswalk within a school zone.

Seattle Police Department Detective Karen Belshay conducted an investigation. Detective Belshay states that "more likely than not, HARTMAN was travelling at or near the speed limit of 30-mph with no evidence of pre-impact braking." Detective Belshay concluded the collision was caused by the failure of Hartman to yield to a pedestrian in the marked crosswalk.[2]

Two months after the accident, on March 19, 2010, the City installed a reduced school speed limit sign on California Avenue Southwest and conducted speed studies at the intersection. The studies showed that most cars drove between 32 and 33 m.p.h. on California Avenue Southwest, with 700 vehicles driving through the intersection in the morning and 800 vehicles in the afternoon between 3:00 p.m. and 4:00 p.m.

As a result of the studies, the City submitted a grant proposal to install flashing beacons at the crosswalk located at California Avenue Southwest and Southwest Dakota Street. The grant proposal states, "The crosswalk is a designated school crossing for four schools located within one to two blocks of the intersection - the Tilden School, Holy Rosary, Seattle Lutheran High School, and Hope Lutheran." The grant proposal also states that the crosswalk is in a "High Priority Area in the Seattle Pedestrian Master Plan[,] just one block north of the busy West Seattle Junction commercial district," and the intersection poses a "long crossing distance for pedestrians (60 feet) and challenging sight lines for drivers."

---

[2] The report states, in pertinent part:

The proximate cause of this collision was HARTMAN failing to yield right of way to the pedestrian (Torgerson) in the marked crosswalk. HARTMAN and Torgerson both described the weather as a light misty rain with the collision occurring at dawn. HARTMAN struck Torgerson in the marked crosswalk, causing her serious injuries. Torgerson had already walked across the northbound lane of travel and had started walking into the southbound lane when the collision occurred.

On March 11, 2011, Torgerson filed a lawsuit against Hartman and the City. Torgerson alleged the City breached its duty to design and operate the California Avenue Southwest and Southwest Dakota Street intersection in a reasonably safe condition, and failed to install adequate signage including a reduced 20 m.p.h. speed limit sign at the school zone intersection.

The City filed a motion for summary judgment. For purposes of the summary judgment, the City stipulated to the elements of duty, breach, resulting injury, and cause in fact. The City argued Torgerson could not establish that any act or omission of the City was the legal cause of the collision. In opposition, Torgerson asserted the City's failure to install a 20 m.p.h. reduced speed limit sign proximately caused her injuries. Torgerson argued that if Hartman had been driving 20 m.p.h., her car would not have struck Torgerson. In support, Torgerson submitted declarations from Certified Human Factors Professional Richard Thomas Gill, PhD, and civil engineer Edward Stevens.[3]

Gill states, "[I]t is my opinion that if Amelia Hartman had been travelling 20 MPH on California Ave. SW prior to this collision, the accident most probably would not have occurred." Gill also states that "reduced speed limits and school speed zone signs increase pedestrian safety" and "at slower speeds, a vehicle's brake to a stopping distance decreases exponentially as speed is reduced." Gill concluded that if Hartman had been travelling 20 m.p.h., Torgerson "would have cleared the intersection and safely made it to the other side."

---

[3] Torgerson also submitted excerpts from the United States Department of Transportation Federal Highway Administration "Manual on Uniform Traffic Control Devices" (MUTCD), a copy of the City's grant application for flashing beacons at the intersection, and excerpts of the police report regarding the accident. The MUTCD provides "the national standard for all highways open to public travel." WAC 468-95-010.

Stevens states that "the lack of a reduced school speed limit signage or device . . . created an unreasonably dangerous condition at this crosswalk." Stevens asserts the City "violated the 2003 Manual on Uniform Traffic Control Devices (MUTCD) and violated 11.52.100 of the Seattle Municipal Code" by not placing reduced 20 m.p.h. speed limit signs at the intersection before the accident.

In reply, the City claimed a reduced 20 m.p.h. speed limit sign would not have prevented the collision. The City asserted a school zone reduced speed limit sign applies "only 'When Children Are Present,' " and there was no evidence that any children were present at the time of the accident. The court granted a continuance to allow Torgerson additional time to respond to the argument that a reduced speed limit sign would not have prevented the collision.

In supplemental briefing, Torgerson argued the Washington Administrative Code (WAC) did not require using only "when children are present" signage but instead provides a number of alternative options for use in conjunction with a school zone reduced speed limit sign. Torgerson also submitted declarations from Hartman, accident reconstruction expert Paul Olson, and a second declaration from Gill.

Hartman states that she "knew the speed limit was 30 MPH on California Ave. near the intersection with Dakota, southbound," but "[i]f the speed limit had been 20 mph on California Ave. approaching the crosswalk at the intersection with Dakota, I would have followed the law and not have exceeded 20 mph."

Accident reconstruction expert Olson states that if Hartman had been travelling at 20 m.p.h. when she approached the intersection, "Torgerson would not have been struck." Olson states, in pertinent part:

> 7.  At 20 mph, a driver would have had approximately 3.9 seconds more time to see pedestrians crossing the street in the crosswalk than drivers traveling 30 mph (from her original position to the point of impact).
>
> 8.  With 3.9 seconds additional time, it is more likely than not that Ms. Hartman would have seen Ms. Torgerson in time to stop or avoid hitting her. During this additional 3.9 seconds Ms. Torgerson would have finished crossing the street and would have been several feet onto the western sidewalk.
>
> 9.  A sign "School Speed Limit 20 when children are present" puts drivers on notice of the likelihood of child pedestrians in the area, which means that drivers will be watching for children, and will anticipate the need to slow down, particularly during the times of day that children are likely to be present in the vicinity of a school or schools.

The second declaration from Gill describes the mathematical calculations he used to reach the conclusion that if Hartman had been driving 20 m.p.h., she would not have collided with Torgerson. Gill states, in pertinent part:

> 6.  [A]ssuming Ms. Torgerson walked no faster than 5 feet per second, it would have taken Ms. Torgerson at least 6 seconds to walk the 30 feet from the eastern curb of California Avenue SW to the point of impact, halfway through the southbound lane.
>
> 7.  According to the police report, Ms. Hartman was travelling south on California Avenue SW in her car at 34 miles an hour, or roughly 50 FPS [(feet per second)], when the collision occurred. Six seconds prior to the collision, at the time Ms. Torgerson stepped off the curb onto the crosswalk, Ms. Hartman was approximately 300 feet north of the point of impact.
>
> 8.  If Ms. Hartman had been going 20 miles an hour or 29.3 FPS, which is the appropriate speed limit in a school zone, for the six seconds prior to the collision, it would have taken her just over 10 seconds to get to the point of impact. In other words, she would have missed Ms. Torgerson by four seconds.
>
> 9.  Since Ms. Torgerson was halfway through the southbound lane of traffic at the time of impact, she would have needed just over 1 second or so to cross the remaining 6 feet and safely reach the western curb. Since

it would have taken Ms. Hartman 10 seconds to get to the impact point going 20 MPH, Ms. Torgerson would have safely crossed with seconds to spare.

In addition, Gill states that the purpose of a 20 m.p.h. school speed limit sign is to slow driving speeds when children are likely to be present:

> The purpose of a school speed limit sign, stating a 20 mph 'when children are present,' is to cause drivers to slow down to 20 mph in anticipation of children in or around the crosswalk area; that is, to have drivers reduce their speed to 20 mph as they drive through the designated areas during times when children are likely to be present (i.e. such as when school is in session, and particularly during the morning/afternoon commute time for children). A reasonable, prudent driver would not keep driving at 30 mph until the driver actually sees a child, then hit the brakes and reduce speed to 20 mph.

Torgerson also submitted evidence showing that the four other schools in the area, Holy Rosary, Saint Christopher Academy, Seattle Lutheran High School, and Hope Lutheran School, had start times ranging from 7:30 a.m. to 9:00 a.m. and before-school activities beginning as early as 7:00 a.m.

The court granted the motion for summary judgment dismissal of the negligence claims against the City "as to causation only." The court granted Torgerson's motion to certify the following issue for discretionary review under RAP 2.3(b)(4):

> Was the City's failure to post a speed limit of 20 MPH in a school zone the proximate cause of plaintiff's injures, which were sustained while plaintiff was walking in a marked crosswalk as a result of a collision with a driver who was traveling in excess of 20 MPH?

We granted discretionary review.

8

ANALYSIS

Torgerson contends the court erred in granting summary judgment dismissal of the negligence claims against the City. The City asserts neither the failure to install a reduced speed limit sign nor the speed of the driver is a legal cause of the collision.

We review summary judgment de novo. Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Summary judgment is appropriate if the pleadings, depositions, and affidavits show there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider the facts and all reasonable inferences from the facts in the light most favorable to the nonmoving party. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999); Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009). Summary judgment is only appropriate if, from all the evidence, reasonable persons could reach but one conclusion. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). " '[A]n expert opinion on an "ultimate issue of fact" is sufficient to defeat a motion for summary judgment.' " Xiao Ping Chen v. City of Seattle, 153 Wn. App. 890, 910, 223 P.3d 1230 (2009)[4] (quoting Eriks v. Denver, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992)).

In a negligence action, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

---

[4] (Alteration in original.)

9

A municipality has the duty to design, build, and maintain reasonably safe roadways. Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). Washington has adopted the specifications for a uniform system of traffic control signal requirements as set out in the MUTCD. RCW 47.36.020; WAC 468-95-010. The MUTCD requires installation of reduced speed limit signs where "a reduced speed zone for a school area has been established." The Seattle Municipal Code (SMC) states, "[N]o person shall operate any vehicle at a speed in excess of twenty (20) miles per hour when passing any marked school or playground crosswalk." SMC 11.52.100. Reduced speeds in a school zone extend 300 feet in either direction from marked school crosswalks. SMC 11.52.100.

Proximate cause consists of cause in fact and legal causation. Hartley, 103 Wn.2d at 777. "There may be more than one proximate cause of an injury." Travis v. Bohannon, 128 Wn. App. 231, 242, 115 P.3d 342 (2005). "Cause in fact, or 'but for' causation, refers to 'the physical connection between an act and an injury.' " Ang v. Martin, 154 Wn.2d 477, 482, 114 P.3d 637 (2005) (quoting Hartley, 103 Wn.2d at 778). Cause in fact is usually a question of fact for the jury. Joyce v. Dep't of Corr., 155 Wn.2d 306, 322, 119 P.3d 825 (2005). The court may determine cause in fact as a matter of law only if reasonable minds could not differ. Joyce, 155 Wn.2d at 322.

Legal causation is a question of law. Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 204, 15 P.3d 1283 (2001). "[L]egal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 478, 951 P.2d 749 (1998). The legal causation analysis focuses on whether, as a matter of policy, the connection

between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. Schooley, 134 Wn.2d at 478-79.

The City asserts that even if it had installed a reduced speed limit sign, the sign would be in effect only when school children are present, and there is no evidence children were present. Therefore, the City argues, the reduced speed limit sign would not have prevented the collision.

The premise of the City's argument is that under WAC 468-95-340, the reduced speed limit sign would have stated, "SCHOOL [ ] SPEED LIMIT 20 [ ] WHEN CHILDREN ARE PRESENT."[5] The regulations for the signage to use in a school zone do not support the premise of the City's argument. Under WAC 468-95-340, a reduced school speed limit sign would not have necessarily used the option of "when children are present." WAC 468-95-340 contains depictions of the signs used in a reduced school zone speed limit. Under WAC 468-95-340, all school zone speed limit signs contain a top plaque reading "SCHOOL" and a center plaque indicating a 20 m.p.h. speed limit. WAC 468-95-340 sets out a number of different options to use for the bottom plaque to indicate the specific times the school speed limit is in effect, including (1) "7:30-8:30 AM [ ] 2:30-3:30 PM," (2) "WHEN CHILDREN ARE PRESENT," (3) "WHEN FLASHING," (4) "MON-FRI," or (5) "WHEN FLAGGED."[6]

---

[5] (Emphasis added.)

[6] We note WAC 468-95-340 was amended in 2011 to reflect the amended 2009 edition of the MUTCD. WSR 11-23-101 (Dec. 19, 2011). Because the amendments to WAC 468-95-340 make no substantial changes, we cite the current statute.

Further, the work order the City submitted to install the speed limit sign after the accident on California Avenue Southwest requested installation of a 20 m.p.h. school zone sign that used the option of "when flashing" rather than "when children are present" for the bottom plaque.

The City also argues Torgerson presented only speculative evidence that a reduced speed school zone sign would have prevented the collision.[7] We disagree. Torgerson presented competent evidence that the collision would not have occurred if the City had installed a 20 m.p.h. reduced speed sign, including the declarations of expert witnesses Gill and Olson. For instance, accident reconstruction expert Olson states that in his opinion, if "Ms. Hartman [had] been going 20 mph when she approached and entered the crosswalk, Ms. Torgerson would not have been struck." Olson states, in pertinent part:

> 7.      At 20 mph, a driver would have had approximately 3.9 seconds more time to see pedestrians crossing the street in the crosswalk than drivers traveling 30 mph (from her original position to the point of impact).
> 8.      With 3.9 seconds additional time, it is more likely than not that Ms. Hartman would have seen Ms. Torgerson in time to stop or avoid hitting her. During this additional 3.9 seconds Ms. Torgerson would have finished crossing the street and would have been several feet onto the western sidewalk.

Gill states in his declaration that "if a 20 mph school speed limit sign had been in place on the morning of the accident, Ms. Hartman most likely would have slowed to 20 mph in anticipation of children being close to the crosswalk, even if she had not seen children there." Gill also stated that "[a] reasonable, prudent driver would not keep

---

[7] We note the City did not move to strike any of the declarations or evidence Torgerson submitted in opposition to summary judgment.

driving at 30 mph until the driver actually sees a child, then hit the brakes and reduce speed to 20 mph."

The City relies on Channel v. Mills, 77 Wn. App. 268, 890 P.2d 535 (1995), to assert speed cannot be the legal cause of the collision. Channel does not support the City's argument. Channel addresses "whether, and when, a favored driver's speed should be deemed a 'proximate cause' of a collision." Channel, 77 Wn. App. at 271.[8] Channel involved an intersection collision where the car driven by the defendant entered the intersection on a green light and therefore was the "favored driver." Channel, 77 Wn. App. at 270. The disfavored driver entered the same intersection on a red light. The disfavored driver sued, arguing she was entitled to recover damages because the defendant could have avoided hitting her but for his excessive speed. Channel, 77 Wn. App. at 270. On appeal, the court held that if excessive speed does no more than bring the favored driver and disfavored driver together to the same location at the same time, excessive speed is remote rather than "proximate" and proximate causation is not established. Channel, 77 Wn. App. at 277. But here, unlike in Channel, there is no dispute that Torgerson, as a pedestrian in a marked crosswalk, had the right of way. RCW 46.61.235(1); SMC 11.40.040.[9]

In a statement of additional authority, Torgerson cites a recent supreme court case that clarifies the question of legal causation in the context of a municipality's duty

---

[8] (Emphasis added.)

[9] Further, contrary to the City's assertion, Hartman's familiarity with the road conditions "does not as a matter of law insulate the county from liability," and whether her intervening negligence is a superseding cause of Torgerson's injury a question of fact for the jury. Tanguma v. Yakima County, 18 Wn. App. 555, 560, 569 P.2d 1225 (1977); Travis, 128 Wn. App. at 242 ("Washington courts have consistently held that it is for the jury to determine whether the act of a third party is a superseding cause or simply a concurring one."); Schooley, 134 Wn.2d at 482 (only an intervening act that is not reasonably foreseeable constitutes a superseding cause).

to design and maintain reasonably safe roadways. In <u>Lowman v. Keller</u>, 178 Wn.2d 165, 309 P.3d 387 (2013), the court held that if the jury found negligent placement of a utility pole was a cause of the plaintiff's injuries, it "cannot be deemed too remote for purposes of legal causation." <u>Lowman</u>, 178 Wn.2d at 171. In other words, if cause in fact is established and the injuries are within the scope of the duty owed, "there is no basis to foreclose liability." <u>Lowman</u>, 178 Wn.2d at 172. Likewise, here, if the collision was in fact caused by the failure to install a reduced speed sign in the designated school zone, it is not too remote for purposes of legal causation.

We reverse summary judgment dismissal of the negligence claims against the City and remand for trial.

WE CONCUR: